# Sarah A. Sturgeon *v.* A. B. Stevens and Genie B. Sturgeon, Appellants.

*Deed of trust—Revocation—Voluntary settlement.*

Where a mother executes a voluntary deed of settlement, without power of revocation, retaining the income for herself during her lifetime, and giving the principal to her son after her death, and the purpose of the settlement fails by the death of the son without issue in the lifetime of the mother, the latter may, after the death of her son, revoke the deed of trust.

*Evidence—Competency of witness—Deed of trust.*

In a proceeding by the grantor against a trustee to revoke a deed of trust, where it appears that the grantor retained the income for her life, and gave the principal at her death to her son, and that at the time the suit was begun the son was dead, the trustee is a competent witness.

*Practice, S. C.—Findings of fact by lower court.*

The Supreme Court will not reverse the findings of fact by the lower court as to the ownership of a fund, where such findings are based upon sufficient evidence, and clear error is not made to appear.

Argued May 4, 1898. Appeal, No. 447, Jan. T., 1897, by defendants, from decree of C. P. Warren Co., June T., 1897, No. 17, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity to revoke a deed of trust.

The facts appear by the opinion of NOYES, P. J., which was as follows :

This is a bill in equity alleging that a certain writing, a copy of which is attached to the bill, purporting to be signed by Sarah A. Sturgeon, John M. Sturgeon, Jr., and A. B. Stevens, was executed by the plaintiff without consideration, without any advice or suggestion as to the necessity of the insertion of a power of revocation therein, was not in accordance with the instructions or desire of the plaintiff, and that she desires to revoke and annul the same, and praying for a decree canceling and setting aside the agreement, for an account from the defendant A. B. Stevens, and a conveyance and transfer from him to the plaintiff of all moneys and securities held by him under the said agreement, and for further relief.

A. B. Stevens in his answer filed at bar admits the facts stated in the bill. Genie B. Sturgeon in her separate answer denies the material averments of the bill and alleges that the writing was fully understood, satisfactory and agreeable to said plaintiff at the time the same was made and executed and for years afterwards, and was intended for the purposes, intents and effects stated therein, and for none other.

### FINDINGS OF FACT.

The plaintiff, Sarah A. Sturgeon, is a widow eighty-eight years of age, residing at Warren, Pa., with her daughter, Mrs. Gerould. In October and November, 1893, she was temporarily at the house of the defendant, Amasa B. Stevens, in the city of Erie; her son, J. M. Sturgeon, was also there much of the time during same period. Mrs. Sturgeon had about $2,100 invested at Warren, where she then lived, a portion of it in a loan to the Warren Brick Company. She had previously executed and delivered to Stevens, with the knowledge of her son, John M. Sturgeon, a will, in which this money was bequeathed to her son at her death. John M. Sturgeon expressed to her and to Stevens much anxiety lest the money should be lost or the control of it obtained by others in Warren, and wanted to get it, as he expressed it, " where he thought it would be safer; where he would make sure of getting it at his mother's death." He became somewhat excited over the matter, and his excitement and urgency troubled his mother, and she consented that he might invest the money in a farm, the title to be taken in her own name; and for some time the son was traveling about in the neighborhood of Erie seeking such a farm, but failed to find one suitable. About November 17, 1893, Mrs. Sturgeon, being anxious to get back to her home at Warren and to satisfy and pacify her son, suggested that a power of attorney be given to Stevens, who was a distant relative, to invest the money, place it on interest and send her the interest. Stevens at her request consented to act. Mrs. Sturgeon told her son that he might have the power of attorney drawn up. Stevens introduced J. M. Sturgeon to Mr. Sawdey, an attorney at Erie, who drew the paper, a copy of which is attached to the bill, under instructions from J. M. Sturgeon, and brought it to the house of Stevens, where it was read in the presence of the plaintiff,

of John M. Sturgeon and of Stevens, and duly executed by all three. There was no explanation of the import of the paper given to the plaintiff nor were any questions asked by her. The paper was taken by Mr. Sawdey and remained in his custody until produced at the trial.

A few days after the execution of the paper the plaintiff sent $2,100 to the defendant, Stevens, by whom it was invested and the interest paid from time to time to the plaintiff. John M. Sturgeon was the plaintiff's only child by her second husband, whose name was also John M. Sturgeon. At the time of this transaction he was about forty years of age, married, and resided in Massachusetts. In 1896 he died, being then a resident of Wichita, Kansas, leaving surviving him a widow, the defendant, Genie B. Sturgeon (who was appointed his administratrix), and no issue.

John M. Sturgeon, the husband of the plaintiff and father of John M. Sturgeon, Jr., died in 1866, having made and published his last will and testament, by which he bequeathed to the plaintiff all his personalty, absolutely, and devised to her his real estate for her life, and to his son John M. the fee in the west half of his farm subject to the life estate of his mother and to the payment of certain legacies charged thereon. He appointed the plaintiff executrix of his will and guardian of his minor son John M. November 29, 1867, the plaintiff as guardian sold at a private sale, under the direction of the orphans' court of Erie county, her ward's interest in the land devised to him, to Robert H. McKee, the consideration being recited in the deed as about $5,500, and took a mortgage to secure $4,393 of the purchase money. April 3, 1872, McKee and wife conveyed to the plaintiff, individually, the same premises, subject to the mortgage which she assumed to pay. April 28, 1873, the plaintiff, as guardian, satisfied this mortgage of record. September 6, 1879, John M. Sturgeon, by deed, reciting the consideration of one dollar, natural love and affection, and other good and valuable considerations, quitclaimed all his interest in the land, and released and quitclaimed all claims, debts and demands, whatsoever, to the plaintiff, his mother. And in the same instrument, after reciting the guardianship and that John M. Sturgeon was past full age, being in his twenty-seventh year, and that he has received from the said

Sarah Ann Sturgeon, his guardian, full and complete payment and satisfaction for all moneys and property which came into her hands as guardian aforesaid, released, quitclaimed and discharged her from all matters and things growing out of the guardianship.

There is some evidence after this date, the plaintiff spoke of money she had invested as " John's money," but none identifying any particular money as his. Genie B. Sturgeon's statement that money invested in the brickyard was spoken of, is clearly a mistake, since no such investment was made until long after the conversation to which she testifies.

The agreement of November 17, 1893, recites that the plaintiff had money under her control coming from the estate of John M. Sturgeon, but it does not recite that John M. Sturgeon, Jr., was in any way interested in the same otherwise than as an expectant devisee of the plaintiff. We are not at liberty to look at the testimony of the plaintiff, for upon the objection of the defendants we have excluded it, and they can only have the benefit of it upon terms which will make her a competent witness for all purposes.

I find as a general fact, from all the evidence, that the money turned over by the plaintiff to Stevens, under the agreement in question, was her own. That there was no consideration other than natural love and affection moving from John M. Sturgeon to her. The agreement of November 17, 1893, a copy of which is attached to the bill, is made a part of this finding.

The requests for findings of fact, presented by the defendants, are answered as follows:

1. Adopted.

2. Adopted.

3. Adopted.

4. We find that there is no evidence that Sarah A. Sturgeon ever accounted to her ward for any of the money for which the farm was sold, except that contained in the deed offered in evidence by the plaintiff, from said John M. Sturgeon to said Sarah A. Sturgeon, dated in 1879. This deed recites that it is made in consideration of one dollar, natural love and affection and other valuable considerations. There is no evidence what these other valuable considerations were; nor is there any that there were in fact no other valuable considerations. The deed

also recites that John M. Sturgeon had received full payment and satisfaction for all matters arising out of the guardianship of his mother; and there is no evidence impeaching this recital. It does not appear that the fund in question in this case came from the sale of the land of John M. Sturgeon.

$4\frac{1}{2}$. This request is in part answered above. There is no evidence in the case of the circumstances attending the execution of the deed above referred to, except what appears in the deed itself, and the other documents offered in evidence.

5. The agreement in question in this case does recite that the money referred to in the same came from the estate of John M. Sturgeon, Sr., who was the husband of the plaintiff and the father of John M. Sturgeon, Jr., another party to the agreement. Under the will of said John M. Sturgeon, Sr., Sarah A. Sturgeon received all his personalty, absolutely, and the life estate in all his realty, and John M. Sturgeon had a remainder in fee in part of the land only. It does not appear in the agreement that the money was the proceeds of land in which John M. Sturgeon was interested.

6. The foregoing answer is applicable to this request also.

7. If the fund at the time of making the agreement in question was the property of Sarah A. Sturgeon in her own right, the agreement is nevertheless a natural one according to the laws of descent, and such as Sarah A. Sturgeon had then made as to all of her property by will, but it was not in accordance with the will of John M. Sturgeon, Sr., from whom the fund descended.

9. There is no such evidence of fraud, accident or mistake in the execution by Sarah A. Sturgeon of the agreement in question as would affect its validity between parties dealing at arm's length. The agreement was read over to her before she signed it. Nor is there such evidence of undue influence exerted over her mind by John M. Sturgeon, Jr., or any one else, as would avoid her act upon that ground alone, in a case in which the burden of proving undue influence, affirmatively, rested upon the party attacking the agreement. But from the circumstances under which the paper was executed, recited in our general findings of fact, including the fact that it was done by the plaintiff, a woman of great age, under pressing importunity from her son; that it was read over to her in the presence of her son, and

had been drawn under his directions, at a time when she was tired and weary and anxious to have the matter closed up; that it varies entirely from the character of the instrument she had authorized to be drawn; that no explanation was made to her at the time of its effect, nor was her attention called to the fact that it contained no power of revocation, nor to the possibility of the death of her son in her lifetime, and the further fact that A. B. Stevens, the trustee, in whose hearing it was also read, did not understand it to be an irrevocable disposition of the money, we find that by reason of her confidence in her son she was put off her guard and executed the paper without intending or knowing that she was making an irrevocable gift to him.

10. We cannot so find.

11. Calls for a conclusion of law. We find as a fact however that the money was paid over to the trustee for the purpose of the trust.

### OPINION OF THE COURT.

That the plaintiff is an incompetent witness to testify to any matters occurring prior to the death of John M. Sturgeon, Jr., in her own behalf in this proceeding, in which the representative of her son is an adverse party, seems to us to admit of no question.

As to A. B. Stevens, there is more difficulty. He is not disqualified by interest, for he has none except as trustee, and this does not disqualify. The possible right to compensation, which is all the pecuniary interest he can possibly have in the controversy, is adverse to the plaintiff, and places him in point of interest where he stands upon the record, on the side of the representative of the deceased party. But he is one of the parties to the thing or contract in action, and John M. Sturgeon, another party, is dead and represented on the record by his administrator. This seems to bring the witness within the letter of the disability created by clause "*e*" of the fifth section of the act of May 23, 1887. Being however both in the contract and on the record, as well as in the interest, adverse to the plaintiff, he is as clearly within the letter as well as the spirit of the seventh section of the same act, and subject to be compelled by her to testify as upon cross-examination. The diffi-

culty in his case arises from the seeming conflict between the two sections of this act. The right to compel adverse parties to testify is among the oldest of the provisions changing the ancient rules as to the competency of witnesses, and is an extension of the right possessed by parties in equity long before any of these changes were made. In Ash v. Guie, 97 Pa. 493, it was held that the provisions of the subsequent laws relating to competency of witnesses, did not affect the right to call adverse parties. And this case seems to us to decide the precise point in controversy here, unless the act of 1887 be given a different interpretation from the previous laws of which it is substantially a codification. Although in the agreement in question Sarah A. and John M. Sturgeon are named as parties of the first part, and Stevens as party of the second part, it is to the actual controversy which has arisen under it we must look in determining the question of competency of witnesses: Good v. Calvert, 1 Pennypacker, 140. Hoskinson v. Miller, 104 Pa. 175, decided that one who is a party to an instrument of writing, the validity of which is in question in a suit, may nevertheless be called as a witness if he be not a party to or pecuniarily interested in the result of the suit. However the parties were arranged in the written instrument, Sarah A. Sturgeon stands in the controversy with which we are dealing opposed both to Stevens and the representative of John M. Sturgeon.

The act of 1869 rendering parties and interested witnesses competent, excepted out of its provisions cases in which a party to the thing or contract in action was dead, etc. While the act of 1887 declares that in such cases no " surviving or remaining party to such thing or contract, or another person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness," etc. While this change in language creates an apparent conflict between the fifth and seventh sections of the act, we think it is clear that it was not the intention of the legislature to narrow the right of a party to a controversy to compel the adverse party to testify, as it was established at the time of the passage of the act. The act of 1887, like all the preceding acts which it replaced, is an enabling and not a disqualifying act. To hold that where one of two parties is dead the survivor may not be called by his adver-

sary and compelled to testify would be as much against the letter of the seventh section as the opposite construction seems to be against that of the fifth; but the whole spirit and intention of the legislation is in favor of the right to call an adverse party to testify against his interest, even although another adverse party may be dead.

The construction of the instrument executed by the plaintiff is, as it seems to us, controlled by the cases of Frederick's Appeal, 52 Pa. 338, and Rick's Appeal, 105 Pa. 528. It was wholly voluntary on the part of the plaintiff, and amounts to no more than an agreement between her and one whom she entrusts with the custody of her money as to the use which shall be made of it. The provisions in favor of her son are operative only after her death. No person other than the plaintiff acquired a present interest in the money by the terms of the instrument. Its evident purpose was to provide for a secure investment of the plaintiff's own money for her own benefit during her life. The provision for the disposition of the funds after her death was in accordance with her will, and taking the preamble and the whole agreement together seems to be an expression of the present mind of the settlor as to what disposition should be made of her money after her death, rather than the immediate gift to her son to be enjoyed in the future. The case therefore seems to be on all fours with Frederick's Appeal, which established an exception to the general rules applicable to voluntary trusts. Frederick's Appeal is not in conflict with the cases which had preceded it, as is shown by the opinions in the many cases following, in which it has been cited with approval, and especially Rick's Appeal, in which its authority was fully vindicated. All the cases which have been differently decided are distinguished by controlling differences in facts. Dennison v. Goehring, 7 Pa. 175, was a conveyance by which the beneficial interest was immediately vested in living persons. Greenfield's Estate, 14 Pa. 490, was a deed inter vivos, which took immediate effect and no attempt was made to revoke it in the lifetime of the grantor. Ritter's Appeal, 59 Pa. 9, recognizes Frederick's Appeal as authority, and is distinguished from it by the fact that an immediate estate vested in the wife of the grantor. Mack's Appeal, 68 Pa. 231, was a sealed bond delivered by the obligor to the obligee, and never revoked.

Eckman v. Eckman, 68 Pa. 460, was a deed of land vesting a present estate in the grantees. Book v. Book, 104 Pa. 240, was a contract containing mutual covenants and therefore based upon valuable consideration. Smith's Estate, 144 Pa. 428, was a valid declaration of trust for the immediate benefit of another and never revoked or withdrawn. Cable v. Cable, 146 Pa. 451, was on all fours with Eckman v. Eckman, supra.

The fact that the instrument in form is an agreement between Sarah A. and John M. Sturgeon that Stevens should act as trustee of certain money for them, coupled with the agreement by Stevens that he will invest it in a certain manner, pay the interest to Sarah A. during life, and the principal and unpaid interest to John M. Sturgeon at her death, is not controlling in view of the recitals and the undoubted facts. John M. Sturgeon was not a necessary party to the contract at all. In it he agrees to nothing; and he acquired no rights until after the death of his mother. The agreement by Stevens was prior to his receipt of any money from Sarah A. Sturgeon. And the instrument is the same in effect as if in delivering the money to him she had given him authority to deal with it according to the terms of the agreement, and not otherwise. The paper contains no language of gift or grant. Had the plaintiff failed to turn over the fund to the trustee as contemplated, she could not have been compelled to do so. Applying the principle of Frederick's Appeal, it seems to us that we must hold that she remained the beneficial owner of the fund, Stevens sustaining to her, substantially, the relation of agent or attorney in fact, and that her disposition in favor of John M. Sturgeon was testamentary in character and not an immediate gift.

### CONCLUSIONS OF LAW.

1. The plaintiff, Sarah A. Sturgeon, is incompetent as a witness in her own behalf to testify to any matters occurring prior to the death of John M. Sturgeon, Jr. Notwithstanding the pro forma ruling admitting her testimony, made on the trial, it has been entirely excluded from our consideration in the determination of this case.

2. A. B. Stevens is a competent witness for the plaintiff, and the pro forma ruling admitting his testimony, made on the trial, has been adhered to.

3. The instrument of writing executed by Sarah A. Sturgeon, John M. Sturgeon and A. B. Stevens, being a voluntary disposition by the plaintiff of her own funds for her own benefit and convenience, no present interest vesting in any other person, and the provisions for payment to John M. Sturgeon taking effect only after her death, is revocable at the pleasure of the said Sarah A. Sturgeon.

4. The said instrument being voluntary, having been drawn under instructions from John M. Sturgeon, the plaintiff's son, who was to take the benefit under it, and presented to his mother and read and executed in his presence, without any warning to her that it differed from the disposition which she had directed to be made, and being in fact a wholly different disposition from what she had so directed, and in view of the other facts recited in our conclusions of fact, including the fact that the plaintiff did not at the time understand that she was making an irrevocable gift to her son, cannot be upheld against her will as such a gift.

5. The instrument in question, relating only to personalty, and amounting in substance to a letter of attorney to Stevens, is well revoked by notice to him and the filing of this bill.

6. The plaintiff is entitled to the relief prayed for.

A decree was entered revoking the deed of trust.

*Error assigned* was decree of the court.

*Perry D. Clark,* for appellants.—The parol evidence necessary to alter, vary or contradict a written contract must be the evidence of two persons, or the equivalent of two persons : Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 46 ; Sylvius v. Kosek, 117 Pa. 76 ; Phillips v. Meily, 106 Pa. 544 ; Jackson v. Payne, 114 Pa. 79 ; Hoffman v. R. R., 157 Pa. 195 ; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 527 ; Murray v. N. Y., L. & W. R. R., 103 Pa. 43.

The rule that a child's conveyance to a parent for an inadequate consideration, of the larger part of its property, must be shown to have been righteous, etc., and without independent advice, does not apply to a conveyance from the parent to a child : Clark v. Clark, 174 Pa. 336 ; Yeakel v. McAtee, 156 Pa. 600.

If Sarah A. Sturgeon, knowing the condition of her son's mind, as she alleges, was misled by him, she was guilty of negligence, and has no relief: Bispham's Equity, 191; Martinsburg Bank v. Tel. Co., 150 Pa. 39; Breneiser v. Davis, 141 Pa. 85; Schielh's Est., 179 Pa. 308; Brawdey v. Brawdey, 7 Pa. 159; Rowand v. Finney, 96 Pa. 196; Boyertown Nat. Bank v. Hartman, 147 Pa. 558.

Such settlements are favored in equity, even when resting on grounds which would not have been satisfactory, if the transaction had occurred between strangers, and they cannot be opened after the death of one of the parties thereto: Burkholder's App., 105 Pa. 31; Wilen's App., 105 Pa. 121.

Stevens was not a competent witness.

*W. E. Rice*, with him *W. D. Hinckley*, for appellee.—The construction of the instrument in question shows on its face according to its terms that it is of a testamentary character: Frederick's App., 52 Pa. 338; Rick's App., 105 Pa. 528; Turner v. Scott, 51 Pa. 126.

There is no just or valid ground for excluding the testimony of A. B. Stevens, one of the defendants. He was not interested in the subject-matter of the controversy, except as his right to demand compensation would make his interest adverse to plaintiff: Ash v. Guie, 97 Pa. 493.

The absence of the power of revocation in the deed, and failure of counsel to advise it, are circumstances, with others, to show that the act was not done with a deliberate will: Russell's App., 75 Pa. 269; Miskey's App., 107 Pa. 611; Worrall's App., 110 Pa. 349; Bristor v. Tasker, 135 Pa. 110; Potter's Est., 6 Pa. Superior Ct. 630.

OPINION BY MR. JUSTICE GREEN, May 26, 1898:

As a matter of course if John M. Sturgeon was the owner of the $2,100 mentioned in the agreement of November 17, 1893, or if he had an interest therein as owner, it would not have been within the power of his mother to revoke the agreement or alter its conditions. The difficulty with the appellant's case is the want of proof of any such interest in her husband in the money in question. It is beyond dispute that the money was actually furnished to Stevens by the plaintiff, and there is not

a particle of definite proof in the case that the appellant's husband ever furnished a dollar of it. The learned court below, after a most careful and minute consideration of every aspect of the testimony, found as a fact that the whole of this specific money was the money of the plaintiff, and we fail entirely to discover any error in this respect. It is true the agreement recites that the plaintiff had in her possession real and personal estate derived from her husband, but as she was the absolute legatee of all his personal estate, and tenant for life of his real estate, the recital in the agreement is entirely consistent with her exclusive ownership of the $2,100. Nor is this result impaired by the fact that she received a deed from her son in 1879, conveying to her all his interest in his father's estate, and acknowledging that he had received full satisfaction and payment from her of all moneys and property that had come into her hands as guardian. He was at that time twenty-seven years of age, or thereabouts, and from that time to the time of his death, some eighteen years later, he never in any manner impugned, or called in question, the entire validity and efficacy of that deed. It is impossible to make any intendment or inference in impeachment of this deed, because there is not a fragment of testimony on the record to justify it. It must therefore be taken according to its import. Granting that she had, or might have had, money in her hands from this or any other source which she might have invested for him, it does not follow by any necessary implication that this particular sum of $2,100 was, in whole or in part, money belonging to her son. The very fact that his mother assumed to exercise entire ownership over the fund by stipulating that the interest of the money was to be paid to her during her life, and that no part of the principal was to be paid to her son until after her death, and that he assented to this arrangement without objection of any kind or the assertion of any personal interest in the money, is a most persuasive, indeed convincing proof, that the money was hers and hers alone. Contentions over the effect of this deed and concerning its consideration, and the liability of the plaintiff to account to her son for moneys derived by her while acting as guardian, and claimed to have been retained by her by virtue of this deed, constitute a large part of the argument for the appellant. But it is manifest they have no relevancy

to the present controversy. It is this particular fund of $2,100, disposed of by the agreement in question, that is to be determined in the proceeding now before us. Some letters written by the plaintiff to her son were given in evidence for the purpose of raising an inference of ownership by the son in the money in the hands of Stevens, in consequence of expressions contained therein claimed to have such a meaning. Without reviewing them in detail, it is sufficient to say that these expressions are entirely consistent with the interest which she expected him to have under her will, and as an ultimate owner of the principal under the agreement in question. Beyond this there is not a word in either of them which indicates that she regarded him as the actual owner of any part of the $2,100. Nor does the testimony of the appellant help to supply this deficiency in the proof. His mother would naturally speak of it as his money when talking with him about its investment, knowing that the whole of the principal of the fund was soon to be his in the ordinary course of nature. Upon all the foregoing considerations, and upon the distinct finding of the court below on this subject, we are most clearly of opinion that the money in question was exclusively the property of the plaintiff at the time the agreement was made. It is true her son was a party to the instrument, but as he was to receive the principal of the fund after his mother's death it was natural, though entirely unnecessary, to name him as a party. This fact alone could not possibly supply the absence of all proof that he furnished or owned a single dollar of the money. It proves nothing upon that subject.

The question then recurs as to the legal propriety of the decree of revocation. It must be borne in mind that the plaintiff's son, who was to receive the principal of the fund after his mother's death, himself died before the present bill was filed. As he was the only object of her bounty under the agreement, after her own wants were provided for, the purpose of the instrument has been frustrated by the death of her son. So far as the plaintiff was concerned there was no further object to subserve by the preservation of the agreement. This was the case in Russell's Appeal, 75 Pa. 269, and it was largely for that reason, combined with the absence of a power of revocation in the instrument, that the court below and this Court in that instance

made the decree of revocation. When to these two considerations is added the further proposition that the writing is of a testamentary character, there are present abundant controlling elements to dispose of the case. The last feature alone was held sufficient to determine the two cases of Frederick's Appeal, 52 Pa. 338, and Rick's Appeal, 105 Pa. 528. We have considered these decisions in the very recent case of The Chestnut Street National Bank v. The Fidelity Insurance, Trust and Safe Deposit Co., Garnishee, in which the opinion has just been filed, ante, p. 333, and for that reason need not dwell upon them at any length now. It is only necessary to say that under the present instrument John M. Sturgeon took no interest whatever in the fund until after his mother's death, and there was no limitation over to any other person in the event of his own death. No other rights, therefore, intervened, and as the plaintiff herself was the only remaining beneficiary of the trust there seems to be no good reason why she should not be permitted to revoke the agreement. We hold upon the whole case, that the absence of a power of revocation, the fact that the instrument was a voluntary settlement not founded upon any valuable consideration, that the purpose of the settlement had failed by the death without issue of the ultimate beneficiary in the lifetime of the grantor, that the writing is of a clear testamentary character, and that there were no intervening rights requiring protection, there is no good reason, legal or equitable, why it should not be regarded as revocable at the mere will of the grantor. We therefore sustain the decree of the court below. There is not the slightest merit in the contention that Stevens was an incompetent witness. He has no interest in the subject of the controversy, he is claiming nothing adversely to anybody, he is necessarily the adverse party to the suit, both he and the plaintiff are living persons, and he is called adversely by the plaintiff. We know of no decision or no statute which disqualifies such a witness when so called. The assignments of error are all dismissed.

The decree of the court below is affirmed and appeal dismissed at the cost of the appellant.