BURTON P. GRAY, trustee, *vs.* IRENE P. CHASE & others.

Suffolk. December 2, 1902. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Equity Jurisdiction,* Fraud. *Equity Pleading and Practice. Bankruptcy.*

In a suit in equity by a trustee in bankruptcy to set aside a conveyance by the bankrupt through a third person to his wife, the case for some reason not appearing on the record was sent to an auditor instead of a master. The auditor found that there was no evidence that the conveyance in question was made or accepted with any fraudulent intent or for the purpose of delaying or hindering creditors. It appeared by the auditor's report that when the conveyance was made the bankrupt was insolvent and heavily indebted and that the conveyance was without consideration. In the Superior Court the judge reached a conclusion opposite to that of the auditor and found that the conveyance was fraudulent as against creditors. *Held,* that on the facts reported this court could not say that the finding of the judge was wrong.

In a suit in equity by a trustee in bankruptcy to set aside a conveyance made by the bankrupt to a third person for the benefit of the bankrupt's wife, if it appears that the purpose of the conveyance was to prevent an attachment by a creditor who recently had obtained a judgment, a decree ordering a release of the conveyance may be warranted, although there is no direct evidence that the specific purpose of the conveyance was known at the time to the person to whom the conveyance was made.

In a suit in equity a decree may be made that each of two wrongdoers shall pay to the plaintiff the amount due to him by reason of the wrongful act in which they both took part, and in such case a payment by one discharges the other.

In a suit in equity by a trustee in bankruptcy to set aside a conveyance of an equity of redemption made by the bankrupt to a third person for the benefit of the bankrupt's wife, if it appears, that the conveyance was made without consideration in order to prevent an attachment of the property by a creditor of the bankrupt, and that the grantee made a paper in the nature of a lease to the bankrupt's wife, who continued to occupy the premises as she did before, paying interest on the mortgages, taxes and other expenses but no rent, the grantee may be held to account for the amount which he should have received as rent, and the bankrupt's wife also may be charged with the rent which she should have paid, having by the adjudication in bankruptcy become a tenant at sufferance of the trustee in whom the title to the property then vested.

Under the bankruptcy act of 1898, § 70 *a*, the property of a bankrupt vests in the trustee from the date of the adjudication in bankruptcy. In a suit by a trustee in bankruptcy an accounting was ordered as to property of the bankrupt found to have been conveyed in fraud of creditors. The decree directed that the accounting should begin on a certain day, which was two days earlier than the date stated in the auditor's report as that of the adjudication in bankruptcy. *Held*, that while there might be an error of fact, the record did not disclose sufficient facts to show an error in law, or to enable the court to correct any error of fact.

In a suit in equity by a trustee in bankruptcy to set aside conveyances in fraud of creditors made by the bankrupt through a third person to his wife and to a third person for his wife's benefit, the suggestion of the death of the bankrupt filed in the case by his widow, one of the defendants, without further proceedings based upon it, does not bring before the court a claim of dower in the property in question.

In a suit in equity, where the defendants have appealed from a decree ordering them to account to the plaintiff for certain money claimed by him, and the plaintiff has not appealed, it is not open to the plaintiff to dispute credits allowed to the defendants by the decree.

LATHROP, J. This is a bill in equity brought by the trustee in bankruptcy of the estate of Nathaniel E. Chase, who was adjudicated a bankrupt on his own petition on April 3, 1900, to have the defendants Irene P. Chase and Edwin M. White ordered to deliver up certain conveyances and to release their rights in two parcels of land. There were other defendants who are not now parties to the suit.

The case was sent to an auditor, who made a report which was amended by leave of court, and there were several supplemental reports of the auditor. The controversy relates to two parcels of land in Boston, one, No. 4 Chestnut Street, and the other, formerly the rear part of the first parcel and now the rear of No. 9 Walnut Street. The auditor's report states many facts, some of which have now become immaterial. The material facts may be summarized thus. Nathaniel E. Chase bought the house numbered 4 Chestnut Street for the sum of $19,500, of which $16,500 was paid by a mortgage given by him to his vendor, and the remaining $3,000 was paid by a check of his wife's, she having money of her own. Subsequently Nathaniel E. Chase made several mortgages, all of which have been found to be valid. One of these, for $10,000, was to a third person who held it for the benefit of Mrs. Chase, on account of the $3,000 advanced by her for the purchase of the house and for other advances subsequently made.

In this state of affairs, on December 16, 1897, the rear of the lot No. 4 Chestnut Street was conveyed by Nathaniel E. Chase to a third person who conveyed it to Mrs. Chase. Neither the third person nor Mrs. Chase paid any consideration for it. Mrs. Chase at this time had agreed to purchase the lot of land No. 9 Walnut Street, and desired to have the rear portion of the Chestnut Street lot, which adjoined the lot No. 9 Walnut Street, annexed to the latter estate. Releases were obtained from the holders of the first and second mortgages on the rear portion of the Chestnut Street lot, and two mortgages held by Mrs. Chase were cancelled (the $10,000 mortgage being afterwards given in their place). The parcel was then conveyed by Mr. Chase to one Reynolds, to whom the lot No. 9 Walnut Street was also conveyed by its owners. Reynolds conveyed the two parcels to Mrs. Chase, who thereupon gave a mortgage on the same to one Chamberlain for $16,000, which mortgage is still outstanding.

The auditor found that Mr. Chase received no consideration for his conveyance to Reynolds.

The auditor further found that there was no evidence that this conveyance was made by Mr. Chase or accepted by his wife with any fraudulent intent, or for the purpose of hindering or defrauding creditors.

On. or about February 26, 1898, Mr. Chase conveyed his equity in the estate No. 4 Chestnut Street, subject to the mortgages thereon, then amounting to $25,000, to Edwin M. White, by a deed in which Mrs. Chase did not release dower. No consideration was paid for this conveyance, and the auditor has found that the property was not transferred in good faith, but to prevent its attachment by creditors of Mr. Chase. After this conveyance, a paper in the nature of a lease was made by White to Mrs. Chase, who has continued ever since to occupy the house as she did before, paying no rent, but paying interest on the mortgages, taxes, and other expenses of carrying the property.

The auditor further found that the real purpose of the conveyance to White was to prevent its attachment in a threatened suit by the executrix of an attorney at law who had a claim for professional services against Mr. Chase at the time the conveyance to White was made, but that there was no

direct evidence that this specific purpose was known to White at the time.

In his supplemental report the auditor found that the actual rental value of the estate No. 4 Chestnut Street was $1,500. He also annexed a copy of the paper signed by White, dated March 25, 1898, in which he stated that he, as owner of the estate No. 4 Chestnut Street, accepted Mrs. Chase as his tenant at will, she to pay as rent the taxes levied or assessed on the premises, and the interest as it became due on three mortgages of $14,000, $1,000 and $10,000, which were secured on the premises, and all interest that should accrue upon said mortgages to the end of her tenancy, and to do all necessary repairs.

The case was then heard before the Chief Justice of the Superior Court upon the auditor's report, and certain exhibits and agreed facts which are unimportant. The Chief Justice made a memorandum of his findings, which was afterwards incorporated in an interlocutory decree, filed February 12, 1902. By the terms of this decree it was ordered that the defendant White should release to the plaintiff the premises described in the bill and known as No. 4 Chestnut Street, as conveyed to him by the deed of February 28, 1898, and that he make, execute and deliver to the plaintiff a deed of the same; that Mrs. Chase make, execute and deliver to the plaintiff a good and sufficient release of all her right, title and interest in the real estate conveyed to her by Charles D. Reynolds, being the original rear part of No. 4 Chestnut Street; that White account to the plaintiff for what should have been received for rent and use and occupation of the premises No. 4 Chestnut Street, at the rate of $1,500 a year from April 1, 1900, up to the present time, so far as the same is in excess of the sum actually paid by Mrs. Chase during that time for taxes, interest and necessary repairs on the estate; that Mrs. Chase account to the plaintiff for rent, use and occupation of the estate No. 4 Chestnut Street, at the rate of $1,500 a year from April 1, 1900, to the present time, less sums actually paid by her during that time for taxes ; and that the cause be recommitted to the auditor to state the accounts between the parties and the amounts for which the defendants should severally be charged.

On March 5, 1902, the defendants appealed from this decree.

On January 24, 1902, Mrs. Chase filed a paper suggesting the death of her husband, and stating that her right of dower was now vested. No action appears to have been taken on this suggestion, nor does the matter appear to have been called to the attention of the judge.

Subsequently the auditor filed a report under the interlocutory decree, and this was not considered by the court as satisfactory. The case was recommitted to the auditor, who found a balance due from Mrs. Chase of $869.29, being the difference between the rent due from her and the interest paid on the first and second mortgages, taxes and repairs. He also found that Mr. White was liable for the same amount based on the same figures. The case was again heard and a final decree was entered, by which, " in addition to said interlocutory decree of February 12, 1902," the defendants Mrs. Chase and Mr. White were severally ordered to pay the sum of $869.29, with costs, within thirty days. From this decree the defendants appealed.

Why an auditor instead of a master was appointed in this case there is nothing in the record to show, and it may be that technically his report should be treated as that of a master, *Falmouth* v. *Falmouth Water Co.* 180 Mass. 325, and that, so treated, nothing is open unless an exception in regard to it is filed to the report. *Popple* v. *Day*, 123 Mass. 520. *Roosa* v. *Davis*, 175 Mass. 117. It appears from the memorandum of the Chief Justice of the Superior Court that there were exceptions filed to the first report, which were waived. No other exceptions appear to have been filed, nor were any requests for rulings made.

But as the sending of the case to an auditor instead of a master was the act of the court and not of the parties, we are disposed to treat the case more liberally, and to decide it upon its merits, though we do not intend to have our action in so doing considered as a precedent for the future.

1. The first question arises in regard to the parcel of land at the rear of No. 4 Chestnut Street, which was annexed to the Walnut Street estate, and which was conveyed by Mr. Chase to his wife through a third person. The auditor has found that Mr. Chase received no consideration for the conveyance, but that there was no evidence that this conveyance was made by him or accepted by her with any actually fraudulent intent, or

for the purpose of delaying or hindering creditors. This finding of the auditor was not followed by the Chief Justice of the Superior Court. In *Livingston* v. *Hammond*, 162 Mass. 375, 376, where a case was heard by a judge of the Superior Court without a jury, and the only evidence was an auditor's report, it was said by Mr. Justice Knowlton : " The judge was not obliged to accept the conclusions of the auditor upon the facts stated in the report, but might consider all the facts in their relation to one another, and draw any proper inferences from them and reach any conclusion that they would warrant."

In the case before us Mr. Chase was insolvent and had been so for many years. The conveyance was without consideration, and he was heavily indebted. The auditor drew the inference that the conveyance was not to delay and defraud creditors. The Chief Justice of the Superior Court drew the opposite inference, and we cannot say on a review of the facts that he was wrong.

The husband received no advantage from the conveyance. His indebtedness was not diminished, and he received nothing. His wife gave him nothing, and suffered nothing, and incurred no liability as a consideration for his transfer. Her arrangements with third persons to make her husband's conveyance more valuable to her has nothing to do with the subject of consideration between her husband as grantor and herself as grantee. The case therefore falls within the ordinary rule, that one who is deeply in debt, and especially when he is insolvent, and who makes a voluntary conveyance which takes property away from his creditors, is presumed to intend the natural consequences of his act, which is to hinder and delay his creditors. The effect of the transaction was to put the lot into the wife's hands, and to leave the indebtedness unpaid, the mortgage debts with less security, and two other debts with no security.

2. The next question relates to the transfer of the equity of redemption by Mr. Chase to the defendant White, of the property No. 4 Chestnut Street. The auditor has found that the real purpose of the conveyance was to prevent the attachment by the executrix of a creditor on whose claim judgment had been obtained. The fact found by the auditor that there was no direct evidence that the specific purpose of the conveyance

was known at the time to White was immaterial. He was not a *bona fide* purchaser for value, and there is enough in the report to warrant the Chief Justice of the Superior Court in directing a release of this equity from White.

3. The next question relates to the accounts. The defendants contend that the final decree imposes a double liability upon White and Mrs. Chase for $869.29, — that is that each must pay this amount, — and is wrong; but we do not understand that this is the meaning and effect of the decree. The judge of the Superior Court evidently considered both as wrongdoers, and ordered a decree against both, but as in an action at law against two wrongdoers satisfaction of a judgment against one is all that the plaintiff is entitled to, (*Corey* v. *Havener*, 182 Mass. 250,) so in equity a payment by one would discharge the other.

4. The principal objection raised by the defendants on the accounts is in charging White with the amount which he should have received as rent and for use and occupation of the estate from April 1, 1900, to the date of the interlocutory decree, February 12, 1902. Treating White as a fraudulent grantee, there can be no doubt that he should be held liable. He was a mere volunteer, and a wrongdoer, and should be held to account for all which might have been made from the premises. 1 Story, Eq. Jur. (12th ed.) 514 *a*. See also *Hubbell* v. *Currier*, 10 Allen, 333; *Jones* v. *Reeder*, 22 Ind. 111; *Thompson* v. *Bickford*, 19 Minn. 17; *Hack* v. *Norris*, 46 Mich. 587.

Treating Mrs. Chase as a fraudulent grantee we see no reason why she also should not be charged with the rent which she should have paid. By the adjudication in bankruptcy, the title to the property vested in the trustee, the lease from White to her ceased, and she became a tenant at sufferance of the trustee. See *Bunton* v. *Richardson*, 10 Allen, 260.

5. The memorandum of the Chief Justice of the Superior Court directed the accounting to begin from the adjudication in bankruptcy of Chase. It is stated in the auditor's report that Chase was adjudicated a bankrupt on his own petition April 3, 1900. The interlocutory decree of February 12, 1902, directed the accounting to begin from April 1, 1900, and the accounting was so made. There would seem to be some error in

the date stated by the auditor, or it may be that it appeared, when the interlocutory degree was signed, that the petition was filed by Chase on April 1, and that that was taken as the date on which the accounting was to begin.  Two of the clauses of § 70 *a* of the bankruptcy law of 1898 read as follows : " The trustee of the estate of a bankrupt, upon his appointment and qualification, . . . shall . . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt," and " property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." It is generally considered that the first clause refers to the date when the property passes, and that the latter clause refers to what passes. *In re Harris*, 2 Am. Bankr. R. 359. *In re Barrow*, 3 Am. Bankr. R. 414, and 98 Fed. Rep. 582. *In re Pease*, 4 Am. Bankr. R. 578. *In re Burka*, 5 Am. Bankr. R. 12, and 104 Fed. Rep. 326. *In re Elmira Steel Co.* 5 Am. Bankr. R. 484, and 109 Fed. Rep. 456. Collier on Bankruptcy, (3d ed.) 456 ; (4th ed.) 510, and cases cited. Lowell on Bankruptcy, 508.

While there may be some error of fact on this point in the case before us, enough does not appear to show that there was any error of law, or to enable us to correct any error of fact.

6. It is argued that pending the litigation Mr. Chase has died, and Mrs. Chase is now, as against the plaintiff, entitled to dower in the premises. There was a suggestion of his death filed in the Superior Court, but it does not appear that anything more was done. There was no amendment of the answer of Mrs. Chase, nor does it appear that the matter was in any way called to the attention of the court. It is settled that a suggestion of insolvency or bankruptcy is not enough. *Dunbar* v. *Baker*, 104 Mass. 211. *Holland* v. *Martin*, 123 Mass. 278. *Dalton-Ingersoll Co.* v. *Fiske*, 175 Mass. 15. The same rule applies to the death of a party. *Reid* v. *Holmes*, 127 Mass. 326. Furthermore, nothing appears to have been done in relation to Mrs. Chase's dower, and we are not called upon to determine whether Mrs. Chase is entitled to dower as against the plaintiff. Such a question is not properly before us.

7. There are several other points taken in the defendants' brief, but none of them seems to require consideration.

8. The plaintiff did not appeal, but contends that no credit whatever should have been allowed the defendants. We are of opinion that this point is not open to him. It was open to him to contest any point made by the defendants on their appeal, but beyond that he could not go unless he also appealed.

*Decree affirmed.*

*H. J. Jaquith*, for the defendants.
*R. D. Ware*, for the plaintiff.