NATHAN MATTHEWS, JR., administrator, *vs.* V. MABEL THOMPSON & others.

HENRY THOMPSON & others *vs.* SAME.

Suffolk.    January 22, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY; JJ.

*Trust,* Termination.    *Dower.    Fraud,* As against creditors.    *Widow.*

T. being indebted to two sisters and a brother, to secure this indebtedness, caused certain real estate to be conveyed to E. by a deed absolute in form, E. executing a declaration of trust for the benefit of T's sisters and brother which was not acknowledged or recorded.    Later at T's request T's sisters and brother executed a writing addressed to E. requesting him to convey the real estate to T. Whereupon E. conveyed the real estate to T. who treated it as his own.    *Held,* that the trust was terminated, and that the deed from E. with the previous request in writing signed by the beneficiaries passed to T. a title which was free from equities.

Where mortgaged real estate is conveyed to secure certain indebtedness and the grantee executes a declaration of trust, in which the property thus held as security is declared to be subject to the prior mortgages and the payment of the debts to the mortgagees, this does not make the prior mortgagees *cestuis que trust* under the declaration, and their consent is not required to terminate the trust.

Where a conveyance by a husband through a third person to his wife as trustee is void *as* in fraud of creditors, and the wife without consideration has executed

the deed in release of dower, if the conveyance is set aside as fraudulent the release falls with it and the wife regains her dower right.

Where a husband through a third person conveys to his wife in trust certain real estate which is substantially all of his property, both husband and wife knowing that the husband is insolvent, and the effect of the conveyance is to put the property beyond the reach of the grantor's creditors, the transaction however free from moral turpitude is fraudulent as against creditors.

Under Pub. Sts. c. 127, § 20, (R. L. c. 135, § 18,) where a widow has not waived the provisions made for her in her husband's will she cannot have dower set out to her unless it appears by the will that the provisions were in addition to her dower.

Two BILLS IN EQUITY filed respectively November 19, 1900, and August 6, 1900, one by Nathan Matthews, Jr., administrator with the will annexed of the insolvent estate of Edward Thompson, seeking to set aside, as fraudulent and void as against the creditors of that estate, a conveyance of certain land on Huntington Avenue, made by Edward Thompson through a third person to the defendant V. Mabel Thompson, or, in the alternative, to have the defendant V. Mabel Thompson declared a trustee for the benefit of the plaintiff as administrator; the other by Henry Thompson, Elizabeth B. Thompson and Frances M. Thompson, the brother and sisters of Edward Thompson, seeking to establish a trust in the land for their benefit.

The cases were heard together by *Barker*, J., who reported them for determination by the full court, such decrees to be entered as justice and equity might require.

The material portion of the will of Edward Thompson, held to cut off his widow's right of dower on its acceptance by her, was as follows:

" 1st. I direct that all my just debts be paid.

" 2d. I give and bequeath all my real and personal estate except as hereafter provided to the Boston Safe Deposit and Trust Company as Trustees, to be held by them for the following purposes.

" 3d. I direct said Trustees to pay the income derived from my real and personal estate as above, in the following manner, viz: to my wife, V. Mabel Thompson during her life one-third of the income derived from said estate; to my daughter Mary E. Thompson during her life one-third of the income from said estate.

" 4th. I also direct that one-third of the income derived from

said estate shall be held by said Trustees for the benefit of my daughter, Maud V. Thompson, to be paid by said Trustees in the following manner: a sum not exceeding such an amount as may be deemed expedient by the said Trustees for her necessary living expenses, together with any expenses for educational purposes until she arrives at the age of twenty-two when she is to receive the income in the same manner as provided for my wife and daughter, Mary E. Thompson.

" 5th. In the event of the decease of my wife or either of my daughters their third of said estate shall be added to the principal and the income derived to be paid to the survivor or survivors of my said wife and two daughters.

" 6th. Upon the decease of my wife and two daughters the income from said estate to be divided in such a manner as to give each of my children or their issue an equal amount. Upon the death of all my children the estate to be divided in accordance with the laws of the Commonwealth of Massachusetts."

The remaining portion of the will disposed of articles of personal and household use.

*R. Spring,* (*R. S. Warner* with him,) for the plaintiff in the first case.

*C. E. Shattuck,* (*F. M. Ives* with him,) for the plaintiffs in the second case.

*G. W. Anderson,* for the defendants V. Mabel Thompson and Maud V. Thompson.

KNOWLTON, C. J.    Edward Thompson, the testator of the plaintiff in the first suit, became indebted from time to time in a considerable sum to his unmarried sisters, Elizabeth B. Thompson and Frances M. Thompson, who were old ladies unfamiliar with business. Of his own motion, he made to them, as security, a mortgage of the real estate in question, subject to other mortgages which together amounted to about $37,000, and afterwards he caused them to foreclose this mortgage. A conveyance of the property, subject to the prior mortgages, was made to his son, who held it as agent of these sisters of the testator. Subsequently the testator caused his son to convey the property to the testator's nephew, one Eldridge, who executed a declaration of trust for the benefit of the old ladies, to secure them for their previous mortgage debts, and also for the benefit of their brother,

Henry Thompson, to secure him for any advancements that he might make to Edward Thompson, and any other claims that he might hold against Edward. The declaration of trust also provided that after the payment of these debts the trustee should pay the balance, if any, to Edward Thompson. This declaration was not acknowledged nor recorded. It was understood that Edward Thompson was to have the entire management of the property, and these arrangements for security were made at his suggestion. At the end of about a year and a half, at his request, a paper was signed by the beneficiaries and sent to Eldridge, as follows :

"September 16, 1896.

Mr. William T. Eldridge,

Dear Sir, — We hereby request and authorize you to convey to Edward Thompson the real estate in Boston conveyed to you by Frederick P. Thompson.

Henry Thompson
Elizabeth B. Thompson
Frances Mary Thompson."

The testator enclosed this paper to Eldridge and asked him for a conveyance of the real estate. Thereupon, on October 6, 1896, Eldridge conveyed the land to Edward Thompson by a deed which was duly recorded, and which contained no reference to a trust. The deed was in the form of an ordinary quitclaim, purporting to be for a consideration of $1 paid by Edward Thompson, not describing him as trustee, and it contained a warranty that the premises were free from all incumbrances made or suffered by Eldridge, and a warranty against the lawful claims and demands of all persons claiming by, through or under him. This deed was delivered by Eldridge to Edward Thompson and was duly recorded. After this conveyance Edward Thompson held the land as if it were his own, mortgaged it several times for his own debts, had repeated negotiations for the sale of it, and treated it in all respects as if he were the absolute owner of it. The first question in the cases is whether he held it charged with a trust in favor of his brother and sisters, so that it still remains subject to this trust in the hands of his widow, to whom it was afterwards conveyed in his lifetime.

In reference to the transfer from Eldridge to the intestate,

the presiding justice found "as a fact that the intention of all parties interested, including that of the retiring trustee, Mr. Eldridge, was not that Mr. Edward Thompson should hold as trustee." He found, "that the intention of his brother and sisters and of the retiring trustee was that the title should go back to him, Edward Thompson, and that the brother and sisters relied upon his saying what he would do in regard to their debts, not because he was a trustee, but because he was their brother and they were willing to trust him."

As all the parties were of full age, and as the trust was created by an arrangement to which the trustee and the *cestuis que trust* were the only parties, there is no doubt that they could terminate it at any time. *Smith* v. *Harrington*, 4 Allen, 566. *South Scituate Savings Bank* v. *Ross*, 11 Allen, 442. *Sears* v. *Choate*, 146 Mass. 395. *Brown* v. *Cowell*, 116 Mass. 461. Upon the findings of the judge, it is plain that they undertook to terminate it and supposed that they had terminated it. The plaintiffs in the second suit, the former *cestuis que trust*, rely upon the Pub. Sts. c. 120, § 3, (R. L. c. 127, § 3,) which provides that "No estate or interest in land shall be assigned, granted, or surrendered unless by such writing [an instrument in writing signed by the grantor or by his attorney] or by operation of law." The kind of instrument in writing required under this section depends upon the nature of the interest to be assigned or surrendered. In the present case, not only the legal estate, but by the record title an absolute estate in fee, including equitable interests as well as legal, was in Eldridge. This title was affected only by an unacknowledged and unrecorded paper. By his deed to Edward Thompson, Eldridge assigned and conveyed, according to the record, a perfect title subject to prior mortgages. This deed was an instrument in writing. The only additional instrument required by the statute was a writing which would relieve the grantor from the consequences of what would have been a breach of trust if he had acted without authority from the *cestuis que trust*. Nothing more was needed to pass a title which was free from equities. As applied to conditions like the present, we are of opinion that the assignment of the equitable rights of the plaintiffs in the second suit, made by a deed of one who held of record a perfect title and who acted under their authority given

in writing, was a compliance with the statute. If we consider it as a surrender of equitable rights, we are of opinion that the paper which they signed was all the instrument required by the statute, it being given as an authority to be acted upon, and which was in fact acted upon, by the trustee who held of record an absolute title. The principle is analogous to that which has been applied to the surrender and cancellation of an unrecorded deed of defeasance, given in connection with an absolute deed to constitute a mortgage. When this is done in good faith, and is subsequently acted upon by the person to whom the surrender is made, the original holder is estopped from setting up the surrendered instrument against the existing title. *Trull* v. *Skinner*, 17 Pick. 213. *Falis* v. *Conway Ins. Co.* 7 Allen, 46, 49. See also as to parol waiver by *cestuis que trust* under the statute of frauds, *Kline's appeal*, 39 Penn. St. 463; *Miller* v. *Pierce*, 104 N. C. 389; *Gorrell* v. *Alspaugh*, 120 N. C. 362, 368. The action of the parties, taken in good faith, makes it impossible in equity for the *cestuis que trust* to hold the trustee for a violation of his duty in making the conveyance, or to charge the conscience of the grantee having knowledge of the previous trust, with a duty to hold subject to the trust.

The suggestion that the trust could not be discharged without the action of the prior mortgagees is not well founded. They are not *cestuis que trust* under the declaration, but the reference to the mortgagees and the payment of their debts is only a recognition of the prior incumbrances subject to which the trust must be executed, and the payment of which would be a necessary preliminary to the payments to the sisters and brother.

We are of opinion that Edward Thompson took the property discharged from the trust, and that the second bill must be dismissed.

The second question in the first case is whether the conveyance from Edward Thompson to his wife as a trustee is fraudulent as against his creditors. There was no valuable consideration for the deed. There is nothing to indicate that his wife's release of dower was made as a consideration for anything that she was to receive or that he was to give. It did not enter into the transaction as a contractual element, but it was like the ordinary release of dower by a wife as an incident to a contract between

others, to which she was not a party. If such a conveyance is set aside as fraudulent, the release falls with it, and the wife regains her right of dower. *Stinson* v. *Sumner*, 9 Mass. 143. *Robinson* v. *Bates*, 3 Met. 40. *Walker* v. *Walker*, 101 Mass. 169.

The mere fact that a conveyance is voluntary, especially if it is founded on a consideration of love and affection, as in the case of a gift from a husband to his wife, or from a parent to his child, does not necessarily render it fraudulent against creditors. Whether it is fraudulent or not, depends upon the circumstances under which it is made. *Cook* v. *Holbrook*, 146 Mass. 66. *Clark* v. *McMahon*, 170 Mass. 91. *Blossom* v. *Negus*, 182 Mass. 515. It is ordinarily a question of fact whether a conveyance was made with intent to hinder, delay or defraud creditors. But in considering such cases the principle is applied that one is presumed to intend the natural consequences of his act. If the known conditions are such that the effect of the act will be to hinder, delay or defraud creditors, the inference follows as matter of law, unless there is something else to control it.

In the present case the conveyance was of substantially all the grantor's property. Both he and his wife, to whom through a third person the conveyance was made, knew that he was insolvent. In fact, he owed about $75,000. The conveyance was in trust to manage the property, with a power to sell and convey or mortgage all or any part of it, and to apply the net proceeds to the payment of taxes and assessments upon the property, interest or principal upon mortgages when payments upon them were required, and of such of the debts and personal expenses of Edward Thompson as it might seem judicious to the trustee to pay out of the proceeds. On the decease of Edward Thompson the trustee was to sell any part of the property then remaining unsold, and to distribute the net proceeds among the persons and in the manner and proportions designated in the last will of Edward Thompson, and in default of such will, among the persons who would have inherited the premises if Edward had died seized of the same, intestate. The effect of the conveyance was to put a large estate of an insolvent person beyond the reach of his creditors. Whether they would ever receive anything from it, was made dependent upon the action of the grantee under the

trust and the action of the grantor under the power of appointment. Unless he exercised the power of appointment in favor of creditors, the property would all go, upon his death, to his heirs at law.

We have been referred to no case in which it is held that such a conveyance is valid against creditors. It is generally if not universally held that freedom from moral turpitude, and an innocent and honest intention to accomplish a good object in the disposition of the property, is not enough to relieve a transaction of this kind from its fraudulent character, in reference to its effect upon the legal rights of creditors. *Freeman* v. *Pope*, L. R. 5 Ch. 538. *Smith* v. *Cherrill*, L. R. 4 Eq. 390, 395. *French* v. *French*, 6 DeG., M. & G. 95. *Taylor* v. *Coenen*, 1 Ch. D. 636. In the case first cited, Giffard, L. J. says, " But where the conveyance is voluntary, then the intent may be inferred in a variety of ways. For instance, if after deducting the property which is the subject of the voluntary settlement, sufficient available assets are not left for the payment of the settlor's debts, then the law infers intent, and it would be the duty of a judge, in leaving the case to the jury, to tell the jury that they must presume that that was the intent. Again, if at the date of the settlement the person making the settlement was not in a position actually to pay his creditors, the law would infer that he intended, by making the voluntary settlement, to defeat and delay them." In *Smith* v. *Cherrill*, Vice Chancellor Malins said, " If a person makes a voluntary settlement, and is, at the time, indebted to the extent of insolvency, . . . that settlement is void as against creditors." The decisions in the Federal and State courts of this country are to the same effect. *Coolidge* v. *Melvin*, 42 N. H. 510, 531. *Freeman* v. *Burnham*, 36 Conn. 469. *Wilson* v. *Howser*, 12 Penn. St. 109, 117. *Kuhn* v. *Stansfield*, 28 Md. 210. *Stewart* v. *Rogers*, 25 Iowa, 395. In *Fellows* v. *Smith*, 40 Mich. 689, 690, Chief Justice Campbell said, "Upon the whole case, while we do not think any fraud was intended, yet we think the conveyance is shown to have been without any legal consideration and voluntary." In *Crawford* v. *Kirksey*, 55 Ala. 282, this language is found in the opinion : " Such disposition is constructively fraudulent, as against the existing debts of the grantor, no matter how innocent or meritorious the mo-

tive with which it is made." In 14 Am. & Eng. Encyc. of Law, (2d ed.) 301, the proposition is stated in this way : " If at the time of the voluntary conveyance the donor is insolvent, the deed is fraudulent, and evidence that no fraud was intended cannot change its character." In the note, decisions from the English and Federal courts, and from the courts of thirty-five American States are cited as supporting the proposition.

In this Commonwealth, while in dealing with the question of fraudulent intent as a question of fact more liberality has been shown to grantors than in many jurisdictions, we find nothing to show that a conveyance of this kind may be held valid as against creditors. In *Kimball* v. *Thompson*, 4 Cush. 441, 446, Mr. Justice Wilde shows that a conveyance made with intent to delay, hinder or defraud any creditor or creditors is utterly void, notwithstanding that no moral turpitude is indicated. In *Marden* v. *Babcock*, 2 Met. 99, 104, Chief Justice Shaw, in speaking of the intent, says, " If the grantor was in debt at the time, as such conveyance must necessarily tend to defeat the rights of creditors, and as all persons are presumed to contemplate and intend the natural and probable consequences of their own acts, the conclusion is irresistible, that such conveyance was intended to defeat creditors, and is therefore fraudulent." In *Norton* v. *Norton*, 5 Cush. 524, 528, this is the language of the opinion : " The conveyance of property by way of gift, by one deeply in debt, if thereby he becomes incapacitated to pay his debts, is legally fraudulent as to his creditors ; and, if in the present case, such should be found to have been the fact, as to the circumstances attending this conveyance, it may be deemed in law fraudulent, though no such fraudulent intention existed in the mind of the grantor, he not properly considering the amount of his indebtedness, or the extent of his assets." In *Winchester* v. *Charter*, 12 Allen, 606, 609, Chief Justice Bigelow refers to a foundation for an inference, as distinguished from proof of an express intent to defraud. These are his words : " Whenever, therefore, no actual fraud or express intent to hinder and delay creditors is proved, it is necessary to show that a grantor at the time of making a voluntary conveyance was indebted beyond his probable means of payment remaining after the conveyance, in order to lay the foundation for the inference that it was made with a

fraudulent design." Chief Justice Morton, in *Cook* v. *Holbrook*, 146 Mass. 66, uses this language: "If made when a person is deeply indebted, it furnishes *prima facie* evidence of fraud; but this may be rebutted or controlled, and the question of fraud is not one of law, but of fact for the jury." If the facts proved are *prima facie* evidence of fraud, the jury should be instructed to return a verdict accordingly, unless there are other facts which control the inference. The latest case in this court is *Gray* v. *Chase*, 184 Mass. 444, in which it is said by Mr. Justice Lathrop that, " The case therefore falls within the ordinary rule, that one who is deeply in debt, and especially when he is insolvent, and who makes a voluntary conveyance which takes property away from his creditors, is presumed to intend the natural consequences of his act, which is to hinder and delay his creditors." See also *Bullard* v. *Briggs*, 7 Pick. 533, 537 ; *Jaquith* v. *Massachusetts Baptist Convention*, 172 Mass. 439.

The question whether a conveyance was made with an intent to hinder, delay, defeat or defraud creditors, in this Commonwealth, is primarily a question of fact; but such facts as appear in this case are *prima facie* evidence of the intent, which, uncontrolled, call for a legal inference that the intent exists. The decision of the question in a case of this kind does not depend upon the existence or non-existence of moral turpitude on the part of the grantor ; but upon an unjustifiable purpose to deprive creditors of their legal rights. Nor is it important that this should be the primary, active, controlling purpose. It is enough if it is one of the purposes which was entertained, either directly or as incidental to a more active purpose. The presumption that one intends the natural consequences of his acts, under known conditions, is usually the controlling principle, in its application by courts and juries to such cases.

The presiding justice found that the parties acted with an honest intention, and that neither Mr. Thompson nor Mrs. Thompson had any purpose of cheating their creditors. This must be held to mean that they thought their act was morally right, and that they had no desire or active purpose ultimately to leave the creditors unpaid. But they knew of the grantor's insolvency, of which the attorney who made the papers was ignorant, and they knew that his indebtedness was very large,

and that this was substantially all of his property. They knew that this conveyance, if given effect, would put it out of the power of any creditor to appropriate any of this property to the payment of his debt. The further finding that they had no "intention or purpose of hindering, delaying, or defrauding any creditor of Mr. Thompson, but the purpose was to preserve the property from the threatened foreclosure for those interested therein," taken in connection with the other findings of fact, must be held to relate to the active, controlling motive under which they acted, and not to an intent and purpose which must be found incidentally to exist, from the facts, and from the inevitable consequences of their act, of which they had full knowledge. These facts were entirely uncontrolled by any other findings. They are evidence which, in law, points to a necessary conclusion as a legal inference, unless they are met by controlling facts. We are of opinion that they show a purpose and intention which were legally fraudulent, although they are not accompanied by moral turpitude, nor the desire or intention that the ultimate result should be harmful to the creditors. The deed must be set aside as fraudulent.

We already have seen that this would leave the widow with her right of dower unaffected by the release which she executed in connection with her husband's deed. But the will of her husband cuts off her right of dower, and having accepted its provisions she cannot now have her dower set out to her. She might have waived its provisions, and if she had done so, she would have been entitled to dower. Pub. Sts. c. 127, §§ 18, 20. *Barnard* v. *Fall River Savings Bank,* 135 Mass. 326. *Dexter* v. *Codman,* 148 Mass. 421.

In the second suit the entry will be, bill dismissed; in the first suit there will be a decree for the plaintiff.

*So ordered.*