CORAM ET AL., APPELLANTS, *v.* DAVIS ET AL., RESPONDENTS.

(No. 2,692.)

(Submitted October 9, 1909. Decided October 23, 1909.)

[104 Pac. 518.]

*Trusts and Trustees—Termination of Trust—Profits—Accounting—Compensation of Trustees—Complaint—Insufficiency—Parties—Equity—Pleadings.*

Trusts and Trustees—Profits—Accounting—Fixing Compensation—Complaint—Insufficiency.
1. The heirs of a decedent and certain claimants entered into a trust agreement whereby the trustees appointed were to receive and hold moneys derived from the estate, until final distribution. When the trust had been partly executed, and before final distribution of the estate, one of the parties to the contract brought suit against the trustees asking, among other things, that they be made to account for profits received by them from moneys in their hands, and that their compensation be fixed. The complaint did not state to whom the funds belonged, or whether the trustees had made any profit from their use; neither was there any allegation that demand had been made upon them for such profits, nor that they had not been paid

for their services or were claiming any compensation for them. *Held,* that the complaint was insufficient to give a court of equity jurisdiction for the purposes stated, and that a demurrer thereto was properly sustained.

Same—Termination of Trust—Equity.

2. *Obiter:* Where the objects of a trust agreement have been accomplished, and there is no longer any necessity for the intervention of the trustees, a court of equity will abrogate it, in a proper case, and its decision is of no concern to the trustees.

Same—Termination of Trust—Trustees—Parties—Complaint—Insufficiency.

3. A party invoking the aid of a court of equity must show affirmatively a necessity for its intervention; hence, where plaintiff's complaint, in an action against the trustees seeking the abrogation of the trust agreement under which they were appointed, made no claim that the defendants had not properly fulfilled their trust, or that the agreement could not be terminated by the parties to it without the intervention of the court, or that complete relief could not be afforded plaintiffs without the presence of the trustees as parties, it was insufficient, and did not state a cause of action against the latter.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by Joseph S. Coram and others against Andrew J. Davis, Jr., and Charles H. Palmer. From an adverse judgment, plaintiffs appeal. Affirmed.

## STATEMENT OF FACTS.

The following statement of facts is taken from the brief of the appellants: The purpose of this action is to terminate a trust to the extent that the appellants are interested in the property affected thereby, and to have an accounting by the trustees of the profits received by them from the trust property. It is also sought to have the compensation of the trustees fixed and determined. The trustees, Andrew J. Davis, Jr., and Charles H. Palmer, separately demurred to the complaint in the case as amended. The demurrers were sustained, and judgment was rendered dismissing the complaint. The appeal is from the judgment.

It appears from the complaint as amended and the contract made a part thereof as "Exhibit A" that what purported to be the last will and testament of Andrew J. Davis, deceased, had been propounded for probate, and that a contest against

such probate had been instituted by Henry A. Root and Sarah
Maria Cummings. Elizabeth and Charles H. Ladd, Ellen S.
and Joshua G. Cornue and Mary L. Dunbar, although not par-
ties to the contest, were interested therein. By the alleged will
all of the property of A. J. Davis, deceased, with the excep-
tion of certain small bequests, was devised and bequeathed to
John A. Davis. Prior to making the contract John A. Davis
had died, leaving surviving him several children, who, with the
administrator of his estate, constitute the parties of the first
part of the contract above referred to. If A. J. Davis had died
intestate, Henry A. Root and the others named as parties of
the second part in the said contract would have received 3.5/11
of the estate, and the heirs of John A. Davis would have re-
ceived 1/11 of said estate. While the contest referred to was
pending, the said contract was entered into. By this contract
it was agreed that, in case said will should be finally probated,
the parties of the first part should have 2/11 of the estate and
the parties of the second part should have 3.5/11 of said estate.
It was further agreed that the first and second parties should
each receive out of the estate remaining after deducting the
5.5/11, $500,000 in cash, and any balance after the payment of
such amount should be divided equally between them. There
were certain provisions of the contract which were to apply
in the event the will should not finally be probated, which it
is not necessary to refer to at this time. The second paragraph
of the contract reads as follows: "For the purpose of carrying
into effect the foregoing provision the said parties of the first
part do hereby sell, assign, transfer, and set over unto the said
parties of the second part an undivided 3.5/11 of said estate
in kind, and hereby direct that by the decree probating said
will, if the same is probated, there shall be distributed imme-
diately to said parties of the second part 2.5/11 of said estate
in kind in such interest to each of said second parties as said
second parties may at that time direct. There shall also be dis-
tributed by said decree to said first parties 2/11 of said estate
in kind in such interests to each as the said first parties at that·

time may direct: Provided, however, that the transfers provided for in this section of the agreement shall not be valid unless said will is probated. The remainder of said estate after the distribution of the 2.5/11 to the said second parties, and the 2/11 to the first parties, shall be distributed by the said decree to Charles H. Palmer and Andrew J. Davis as joint trustees of the parties hereto, to be applied, used or distributed according to the terms and provisions of this contract, and in such distribution to said trustees shall be included 1/11 of said estate in kind, which shall be held by said trustees, and if said will shall finally be probated and the said estate distributed under said will according to the terms of this contract, said trustees are hereby directed to deliver over and transfer unto the said parties of the second part in such interests to each as said second parties at that time direct, the said 1/11 of said estate so distributed to and held by such trustees in the manner above recited.''

As recited in the contract, if A. J. Davis had died intestate, the heirs of John A. Davis would have been entitled to 1/11, and Henry A. Root and his associates would have received 3.5/11 of the estate, making in all 4.5/11. Now, it was uncertain at the time of entering into this contract whether or not said will would be finally probated. Upon a dismissal of the contest of Root and Cummings others might come forward and contest, and, after the will should be admitted to probate, applications could be made at any time within one year to have the probate vacated. In view of these considerations, the parties could not make any definite and final contract with reference to more of the estate than 4.5/11, which they were entitled to receive in any event. They therefore made a contract whereby the heirs of John A. Davis would, in the event the will should be defeated, receive 2/11, 1/11 more than they were entitled to under the law, and Root and his associates would receive 2.5/11, 1/11 less than they were entitled to under the law. They further agreed that, in the event the will should be finally probated, Root and his associates should receive 3.5/11 and the heirs of

John A. Davis should receive 2/11, and the remainder should be divided equally. Because of the possibility, and perhaps probability, that the will would be defeated, unless the heirs who were not parties to the contract should be satisfied, the contract provided that all but 4.5/11, which the parties to the contract were entitled to in the event the will should be defeated, should be paid to A. J. Davis and C. H. Palmer as trustees. The provisions of the contract clearly disclose that it was contemplated at the time that the heirs who were not parties to the contract would demand recognition, and it was because of the necessity of recognizing such demands in order to have the will finally probated that all of the estate except 4.5/11 was made a trust fund. The heirs of John A. Davis and Root and his associates had settled their differences, and all were then interested in having the will finally probated. To accomplish their mutual desire they placed that part of the estate which would belong to the others, if it could be established that A. J. Davis died intestate, into a trust fund, with the understanding, expressed in the contract, that whatever remained after satisfying the other heirs and accomplishing the final probate of the will should belong to them as provided in the contract. Andrew J. Davis, Jr., and C. H. Palmer were not only made trustees, but by the twelfth paragraph of the contract Davis was made the general agent of the parties of the first part, and Palmer was made the general agent of the parties of the second part in carrying out the contract. That it was the purpose and intent of the parties to the contract to secure for themselves as much of the estate of A. J. Davis, deceased, as possible, and that they were to work jointly to this end, is evidenced by the fifth, tenth, and thirteenth paragraphs of the contract. To accomplish this purpose and consummate this intent, the trust fund referred to was established, and the trustees were empowered to do all things necessary to carry out the contract. After deducting the 4.5/11, or 450/1100, there remained for the trustees 650/1100. The trustees made assignments and transfers to other heirs and claimants in order to

secure the final probate of the will, so that there was left in the trust fund at the time the will was finally admitted to probate 431/1100. The contract creating the trust, and the assignments and transfers to the other heirs, were made the basis of the order or judgment confirming the probate of the will and establishing the rights and shares of the several parties entitled to participate in the distribution of the estate after the payment of the legacies referred to in the will.

In the complaint it is alleged:

"(23) That all the legacies provided for in said will have been fully paid and satisfied, and the said defendants Andrew J. Davis, Jr., and Charles H. Palmer, as trustees, are entitled to have and receive 431/1100 of the balance of the estate of Andrew J. Davis, deceased, to be distributed.

"(24) That all claims and demands against said trust fund of 431/1100 of said estate have been fully paid and satisfied and discharged, except the said claim of Thomas Jefferson Davis, the amount of which has been set aside and is held and retained by said trustees as aforesaid, and all money and property to which said trustees are entitled upon a further distribution of the estate of Andrew J. Davis, deceased, will be received and held by said trustees to be paid over and distributed by them to the heirs and personal representatives of John A. Davis, deceased, and the plaintiffs herein, according to their respective interests.

"(25) That the plaintiffs Joseph A. Coram and Henry A. Root have purchased and acquired and are now the owners of all the right, title, and interest of Elizabeth S. Ladd and her husband Charles H. Ladd and Mary Louise Dunbar in and to the estate of Andrew J. Davis, deceased.

"(26) That of the remainder of said estate of Andrew J. Davis, deceased, to be distributed to the defendants as trustees, to-wit, 431/1100 thereof, these plaintiffs are entitled to have paid over and distributed to them and are the owners of 265.5/1100, making the total share and interest of these plain-

tiffs in the balance of the estate of Andrew J. Davis, deceased, to be distributed, 515.5/1100.·

"(27) That the said defendants herein, as trustees, have no duty whatever to perform with reference to the 431/1100 of the estate of Andrew J. Davis, deceased, hereafter to be distributed to them, except to receive and receipt therefor and to pay the same over to these plaintiffs and the heirs and personal representatives of John A. Davis, deceased, according to their respective interests as hereinbefore set forth."

In the amendment to the complaint it is alleged: "(5) That all of the expenses incurred in carrying out said contract made a part of the complaint as 'Exhibit A' and mentioned in paragraph 13 thereof, with interest thereon, have been repaid to the parties furnishing the funds for such expenses."

Paragraphs 21 and 22 of the complaint are as follows:

"That the said Thomas Jefferson Davis asserted a claim to the said estate of Andrew J. Davis, deceased, or some interest therein in addition to the legacy devised and bequeathed to him by said will, and the said claim so made was purchased by the parties to the compromise agreement dated the twenty-eighth day of April, 1893, attached hereto as 'Exhibit A,' and made a part hereof, and it was agreed and understood by and between all of said parties that the amount of the purchase price of said claim should be paid out of the 431/1100 assigned and transferred to the defendants herein as trustees, but that said payment should not be made until the final distribution of the estate of said Andrew J. Davis, deceased.

"(22) That, of the amount paid and distributed to said trustees pursuant to said order of partial distribution dated the twenty-sixth day of August, 1897, there was reserved and retained by said trustees the sum of $85,000, and of the amount distributed and paid to said trustees pursuant to the order of partial distribution dated the third day of December, 1901, there was reserved and retained by said trustees the sum of $7,275, to be used in the payment of the purchase price of the claim of said Thomas Jefferson Davis. That said trustees have

held and had the use of said sum of $85,000 since the twenty-sixth day of August, 1897, and of said sum of $7,275 since the month of April, 1903. That the said sums of $85,000 and $7,275 constitute the full sum and amount to be paid for the said claim of Thomas Jefferson Davis when a final distribution of said estate of Andrew J. Davis, deceased, shall be made.''

The purpose of the action is to have the trust terminated as to the 265.5/1100 to which the plaintiffs are entitled, and to have an accounting by the trustees of the interest and profit received by them on the $92,275 held for Thomas Jefferson Davis, as alleged in the complaint, and to have the compensation of such trustees fixed and determined.

Regarding this statement of facts the respondents' counsel say in their brief: ''The appellants' statement is quite full and so far as facts are concerned is quite correct. Many conclusions and speculations concerning the reasons for entering into the contract, which is the subject of contention, are indulged in. These are quite plausibly stated, and it may be that the facts ultimately will sustain what is claimed. The complaint, however, in itself would not justify these without the explanations offered in the brief. We are not inclined, though, to find fault with the brief or any of its contents. * * * ''

*Messrs. Gunn & Rasch* filed a brief in behalf of Appellants; oral argument by *Mr. M. S. Gunn.*

*Messrs. Forbis & Evans,* for Respondent Davis, submitted a brief, and *Mr. John F. Forbis* argued the case orally.

*Mr. Edward Horsky,* appearing in behalf of Respondent Palmer, filed a brief.

MR. JUSTICE SMITH delivered the opinion of the court.

We shall take the appellants' statement, stripped of the argument therein contained, as the basis of our decision. The situation depicted is a novel one, and counsel confess their inability to find in the books any substantial precedent for the same.

Does the complaint state a cause of action against the trustees?
After a careful study of the pleadings, we have arrived at the
conclusion that it does not, and that the district court was cor-
rect in sustaining the demurrers thereto.

It appears that the trust has been partly executed, and that
there remains in the hands of the trustees the sum of $92,275 on
account of the claim of Thomas Jefferson Davis. Whether this
money belongs to Thomas Jefferson Davis or to the parties to
the compromise agreement we are unable from the complaint
to determine. At any rate, this amount is not due from the
trustees until the final distribution of the estate, and plaintiffs
do not claim the same; but they demand that the trustees be
required to account to them for interest and profits thereon
at this time. In view of the fact that it cannot be ascertained
to whom the principal belongs, we think the court would not
have been justified in assuming jurisdiction of the case on ac-
count of the allegations relating to this matter alone. If the
principal belongs to Thomas Jefferson Davis, the interest prob-
ably belongs to him also, if any interest is to be charged against
the trustees. There is no allegation in the complaint that the
trustees have made any profit from the actual use of the money.
Neither is there any allegation that prior to the commencement
of this action any demand was made of them for either interest
or other profits. So far as the complaint shows, the agreement
between the parties was silent as to interest or profits. The
courts have held that in certain contingencies a trustee is liable
for interest, and in certain other cases that he is not. (See
28 Am. & Eng. Ency. of Law, 2d ed., 1080.) Whether or not
a demand is necessary before suit brought depends upon the
facts of the particular case. (*Kerr* v. *Laird,* 27 Miss. 544.)
Ordinarily, a demand for an accounting is necessary, and the
bill must contain an allegation that such demand has been made.
(1 Ency. of Pl. & Pr. 98.) Again, there is nothing in the
complaint to show that the trustees are claiming any compensa-
tion for their services, or to indicate that they have not been
fully paid for all the services heretofore performed by them.

Under these circumstances, a court of equity ought not to assume jurisdiction on account of the matter of compensation for the trustees' services alone.

The most serious question is whether the complaint states a cause of action against the trustees on account of the fact that the plaintiffs are entitled to have the agreement creating the trust abrogated, for the reason that its object has been accomplished. Plaintiffs maintain that there is no longer any necessity for the intervention of the trustees. The learned district judge intimated in his order sustaining the demurrers an opinion to the same effect, and counsel for the respondents in their brief say: "Let the parties themselves get together and dispose of the property as they will. This we admit they can do, even without the trustees' consent." If the facts set forth in the complaint are true, we see no reason for longer continuing the trust agreement; and a court of equity will afford relief in proper cases. (See *Russell's Appeal,* 75 Pa. St. 269; *Tilton* v. *Davidson,* 98 Me. 55, 56 Atl. 215; *Matthews* v. *Thompson,* 186 Mass. 14, 104 Am. St. Rep. 550, 71 N. E. 93, 66 L. R. A. 421; *Eakle* v. *Ingram,* 152 Cal. 15, 100 Am. St. Rep. 99, 75 Pac. 566.) But let us remember that the plaintiffs are invoking the aid of a court of equity. In order to do this, they must show affirmatively a necessity for the intervention of the court. (16 Cyc. 227, 265.) They must show that the trustees are necessary or proper parties to the action, and state facts sufficient to compel the latter to answer the complaint.

Let it also be remembered that since the commencement of this action the first parties to the trust agreement have by the plaintiffs been made defendants by leave of court. They may controvert the allegations of the complaint, or allow the matter to go by default, or, perhaps, consent that the agreement be abrogated. If they pursue the latter course, then the trustees have confessedly no complaint to make; and, in view of the circumstances, it seems reasonable to suppose that if the trust agreement is indeed of no further benefit to them, and they have regard to their material welfare, which it is to be presumed

they have, they will consent. At any rate, the trustees have no interest in their decision. They, the trustees, are not accused of misconduct, incompetency, neglect of duty, insolvency, or denial of their trust. In fact, no claim is made that they have not properly fulfilled that trust in every particular. They can have no possible objection to having the agreement set aside, either by consent of the parties or order of the court. (See *Sturgeon* v. *Stevens*, 186 Pa. St. 350, 40 Atl. 488.) They were appointed by the other parties to this action and can be removed by them; but they ought not to be haled into court and subjected to costs unless they have so conducted themselves, as that a cause of action can be stated against them or complete relief cannot be afforded the plaintiffs without their presence as parties. Neither of these conditions obtains in this case, so far as the allegations of the complaint enlighten us. The action can proceed to final judgment between the parties to the trust agreement, and, whatever the decision may be, need not and cannot concern the trustees.

We conclude, therefore, that, as no facts are alleged in the amended complaint sufficient to constitute a cause of action against the respondents, the judgment of the court below should be, and it is, affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.