ELLEN M. ROLFE, administratrix *de bonis non,* *vs.* ELIZABETH CLARKE.

Middlesex.     March 14, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Fraud,* As against creditors. *Equity Pleading and Practice,* Decree.

A deed was made by a married woman to her sister conveying certain real estate, which practically was all the property owned by the grantor. At the time the deed was made the grantor owed to a certain creditor about $1,500 for services

rendered. The consideration for the deed was that the grantor and her husband should be supported as long as they or either of them lived by the grantee. There was no actual intent to defraud creditors, but the grantee as well as the grantor knew that the conveyance of the real estate would make the grantor insolvent and incapable of paying her debt to the creditor mentioned above. The grantor died, and the creditor mentioned above procured his own appointment as administrator *de bonis non* of the estate of the grantor and as such administrator brought a suit in equity against the grantee to obtain the satisfaction of his individual claim out of the real estate conveyed by the intestate to the defendant. *Held,* that, although the agreement of the defendant to support the grantor and her husband was a valuable consideration and the deed₁ was good between the parties, the conveyance was fraudulent in law as against creditors and might be avoided by them.

Accordingly in the case described above it was ordered that, unless the defendant within a time limited should pay the individual claim of the plaintiff as a creditor and should pay also the expenses of administration and the costs of suit incurred by the plaintiff, the real estate should be sold under a license previously granted by the Probate Court and the proceeds applied to the satisfaction of the plaintiff's claim, any surplus being paid to the defendant.

In the case described above it appeared that the defendant, after the conveyance of the real estate to her, received from the net income produced by it a sum of money sufficient to repay her for all expenses incurred in the support of the grantor and her husband, so that it was not necessary to consider whether, if this had been otherwise, she would have been entitled to be reimbursed for such expenses out of the proceeds from the sale of the real estate.

CROSBY, J.   This is a bill in equity brought by the administratrix *de bonis bon* of the estate of Maria J. Wiltbank, to set aside as fraudulent and void a deed of certain real estate made by the plaintiff's intestate to the defendant and dated February 17, 1911. The suit was heard by a judge of the Superior Court * who made certain findings of fact, and a final decree has been entered in favor of the plaintiff from which the defendant appealed.

The real estate so conveyed was worth $6,000 at the date of the deed and $5,000 at the time of the hearing in 1915. At the time of the conveyance, the grantor owned no other property except certain personal estate which is found to be of the value of $180. The real estate was conveyed subject to a mortgage thereon for $250 and the inchoate right of curtesy of the grantor's husband. On the date of the conveyance the grantor owed the plaintiff individually for services rendered the sum of $1,557, to recover which the plaintiff brought an action against the administratrix of the estate and recovered a judgment for $1,657.16 including interest and costs, no part of which judgment has been paid.

---

* *King,* J.

When the conveyance was made and for some time previously, Mrs. Wiltbank had been suffering from a fatal disease from which she died on May 11, 1911. She was a sister of the defendant and, shortly after the date of the deed, went to live with Mrs. Clarke and remained there until her death. The judge found that "Mrs. Wiltbank's conveyance to her sister rendered her insolvent and unable to pay her then existing creditors, including Ellen M. Rolfe,"* that "there was no actual intent upon the part of Mrs. Wiltbank, in making this conveyance to her sister, to hinder, delay or defraud her creditors, or any of them, unless such intent is to be conclusively presumed as matter of law from her acts in the premises," that "one of the purposes of the grantor . . . in making this conveyance, was to prevent her husband, in case he survived her, from becoming a statutory heir thereto, or of any share or interest therein. But I do not find that this was her sole purpose. Another purpose of the grantor in making this conveyance was to give her sister in this manner substantial evidence of her love and affection and to compensate her sister for the care . . . which she expected to receive."

The judge also found that the grantor hoped and expected her sister would support her (the grantor's) husband, but that there was no express agreement to that effect at or before the making of the conveyance; that after the conveyance the defendant cared for the grantor during the last illness of the latter and that such care "was rendered in part, if not wholly, gratuitously and from love and affection," and that the defendant paid to or on account of the grantor's surviving husband $7 a week until his decease in May, 1914, that "she did this in consideration, in whole or in part, of the release by the husband of his right of curtesy in said real estate, and in accordance with an agreement between Mrs. Wiltbank and defendant after the conveyance here in question had been made."

The judge further found that the "defendant took said premises in entire good faith and without knowledge or notice of complainant's claim. . . . That the defendant should render to her sister such services and incur such expenses in her behalf, was one of the considerations of the conveyance in question."

---

* This was the individual claim of the plaintiff on which she obtained the judgment mentioned above.

The plaintiff contends that upon the findings made by the judge the sole consideration for the conveyance by Mrs. Wiltbank to her sister was founded upon love and affection and because of the feeling of gratitude of the grantor on account of the care and attention received by her during her last illness from Mrs. Clarke. There is much force in this contention, but in view of the findings above referred to and other findings made by the judge, and the evidence presented at the hearing, all of which is reported, we are of opinion that a part of the consideration for such conveyance was the expectation and understanding on the part of the grantor that she and her husband should be supported as long as they lived respectively by the defendant, and that there was therefore a good and valid consideration for the deed.

The question remains whether the conveyance, although given for a valuable consideration, was in fraud of the creditors of the plaintiff's intestate existing at the time when it was made.

The judge found that "At the time of taking said conveyance said Elizabeth Clarke knew in general the nature and extent of said Maria J. Wiltbank's property." This is equivalent to a finding that the grantee knew the real estate which she received was substantially all the property of which her sister was possessed, and that the conveyance rendered the grantor insolvent and unable to pay her then existing creditors including Ellen M. Rolfe.

While it is found that the defendant did not know of the debt due to the plaintiff individually when the deed was given, still it is a reasonable inference, in view of the close and intimate relation of the parties, including the fact that they were sisters, and all the circumstances as disclosed by the evidence, that the defendant knew of the indebtedness to others when she took title to substantially all the property her sister then owned. As was said by Knowlton, C. J., in *Matthews* v. *Thompson*, 186 Mass. 14, 23, "The question whether a conveyance was made with an intent to hinder, delay, defeat or defraud creditors, in this Commonwealth, is primarily a question of fact; but such facts as appear in this case are *prima facie* evidence of the intent, which, uncontrolled, call for a legal inference that the intent exists. The decision of the question in a case of this kind does not depend upon the existence or non-existence of moral turpitude on the part of the grantor; but upon an unjustifiable purpose to deprive

creditors of their legal rights. Nor is it important that this should be the primary, active, controlling purpose. It is enough if it is one of the purposes which was entertained, either directly or as incidental to a more active purpose. The presumption that one intends the natural consequences of his acts, under known conditions, is usually the controlling principle, in its application by courts and juries to such cases. . . . These facts were entirely uncontrolled by any other findings. They are evidence which, in law, points to a necessary conclusion as a legal inference, unless they are met by controlling facts. We are of opinion that they show a purpose and intention which were legally fraudulent, although they are not accompanied by moral turpitude, nor the desire or intention that the ultimate result should be harmful to the creditors."

We are of the opinion that, although such an agreement to support an insolvent grantor and her husband may be a valuable consideration, still it is not sufficient to uphold a conveyance as against prior creditors even if there was no actual intent to defraud.

In view of the finding that the defendant, since the conveyance to her, has received as net proceeds from the real estate so conveyed a sum sufficient to repay her for all expenses incurred in behalf of the grantor or her husband, we need not consider whether she would be entitled to be reimbursed for such expenses, although the deed be void as to creditors.

Without reciting the evidence, which is voluminous, we are of opinion that the findings were warranted and that they showed an intention of the grantor which was fraudulent in law, although there was no actual intent to defraud her creditors.

In *Gunn* v. *Butler*, 18 Pick. 248, there was evidence of the payment of an adequate pecuniary consideration apart from the promise to support the grantor. In that case Chief Justice Shaw used this language: "Still, however, as it purports to be made on a pecuniary consideration, and contains onerous stipulations on the part of the grantee, it cannot be said to be a voluntary conveyance, to be pronounced fraudulent against creditors as matter of law. But if it be true, as it is now stated, that no consideration was in fact paid, that it was a conveyance of the whole of the grantor's estate, that he was indebted at the time, and that the

conveyance had a tendency to defraud and defeat or hinder the creditors, a jury should be instructed, upon finding these facts, to find the deed fraudulent against creditors." *Slater* v. *Dudley,* 18 Pick. 373. *Pelham* v. *Aldrich,* 8 Gray, 515. *Rice* v. *Cunningham,* 116 Mass. 466. *Allen* v. *Allen,* 213 Mass. 29, 33. The conclusion which we have reached is in accordance with the principle stated in *Gunn* v. *Butler* and *Matthews* v. *Thompson, supra,* and is abundantly supported by decisions in many other jurisdictions. *Egery* v. *Johnson,* 70 Maine, 258. *Davidson* v. *Burke,* 143 Ill. 139, 146. *Robinson* v. *Stewart,* 10 N. Y. 189, 195. *Hawkins* v. *Moffitt,* 10 B. Mon. 81. *Walker* v. *Cady,* 106 Mich. 21. *Seekel* v. *Winch,* 108 Iowa, 102. *McCord* v. *Knowlton,* 79 Minn. 299. *Faber* v. *Matz,* 86 Wis. 370. *Long Branch Banking Co.* v. *Dennis,* 11 Dick. 549. *Woodall* v. *Kelly & Co.* 85 Ala. 368, 375.

While the deed is fraudulent and voidable as against existing creditors of the grantor, still it is valid as between the parties. The defendant's rights in the real estate in this proceeding are subject to the plaintiff's claim as a creditor of the estate of Maria J. Wiltbank; a decree could not properly be entered wholly setting aside the deed thereby causing the property to become assets of the estate. *Norton* v. *Norton,* 5 Cush. 524, 531. *Mallow* v. *Walker,* 115 Iowa, 238. *Wheeler* v. *Wallace,* 53 Mich. 364. *Byrd* v. *Hall,* 196 Fed. Rep. 762.

The defendant's rights in the property are subject only to the individual claim of the plaintiff, the expenses of administration, and costs of suit. *Norton* v. *Norton, supra. Chase* v. *Redding,* 13 Gray, 418. *Allen* v. *Ashley School Fund,* 102 Mass. 262, 266.

It follows that the decree must be reversed and a decree entered that the defendant pay the amount of the judgment and interest thereon due to the plaintiff individually, and produce evidence thereof or of a sufficient tender; also shall pay the expenses of administration and the costs of this suit, as a judge of the Superior Court may hereafter allow and approve. Then all further proceedings in this suit shall be stayed without further costs to either party, all such payments to be made within sixty days from the entry of this decree.

If the defendant fails to make such payments within the time limited, the plaintiff may sell the real estate in accordance with the terms of the license heretofore granted by the Probate Court;

and after deducting the expenses of administration, the costs of this suit and the amount of the judgment and interest thereon due the plaintiff individually, shall pay to the defendant any surplus that may remain.

*So ordered.*

*E. J. Flynn,* for the defendant.
*M. G. Rogers,* (*S. E. Qua* with him,) for the plaintiff.