DUDLEY H. DORR, trustee in bankruptcy, *vs.* GRACE P. TRACY & others.

Suffolk.    December 10, 1923. — February 28, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* To set aside conveyance in fraud of creditors. *Gift. Parent and Child.*

At the trial of a suit in equity by a trustee in bankruptcy to require payment to him by a son of the bankrupt of the proceeds of the sale of shares of corporate stock which the bankrupt had conveyed to his wife and she to the son, there was evidence tending to show that the bankrupt previous to the date of the transfer had been a dealer in leather, and that, owing to a critical state of the market at the time of the transfer of the shares in question, the bankrupt was carrying a heavy invoice of leather, the price of which was rapidly falling, and was embarrassed and involved to an extent to endanger the rights of his creditors. There also was evidence warranting a finding that the bankrupt had the actual intention to defraud his creditors when the transfer was made. *Held,* that findings by the judge that there was a serious ques-

tion whether the bankrupt was solvent at the date of the transfer and that the transfer to the wife was presumptively in fraud of creditors, and that there was actual intention to defraud the creditors, could not be said to be plainly wrong, and a decree granting relief to the plaintiff was warranted.

BILL IN EQUITY, filed in the Superior Court on February 17, 1922, and afterwards amended, by the trustee in bankruptcy of Neil J. Tracy to require payment to the plaintiff of the proceeds of the sale of three hundred and twenty-five shares of the common stock of Harney, Tracy, Crehan Company, which were alleged to have been transferred in fraud of creditors by the bankrupt to his wife, the defendant Grace P. Tracy, and by her to their son, the defendant Edward W. Tracy, by whom the shares were sold and the proceeds retained.

In the Superior Court, the suit was heard by *Morton,* J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material evidence is described in the opinion. By order of the trial judge, a decree was entered directing the payment to the plaintiff of $26,523.28, the proceeds of the sale of the shares by the defendant Edward W. Tracy. The defendants appealed.

*H. V. Cunningham,* (*W. S. Bangs* with him,) for the defendants.

*Grafton L. Wilson,* (*D. H. Dorr* with him,) for the plaintiff.

PIERCE, J. This is a suit in equity, brought by the trustee in bankruptcy of Neil J. Tracy to recover of the defendants Tracy, as assets of the bankrupt estate, the definite proceeds of the sale of three hundred and twenty-five shares of stock, which Tracy transferred September 15, 1920 (more than four months before his bankruptcy), to his wife, the defendant Grace P. Tracy, without consideration other than love and affection; and which she in turn transferred in March, 1921, to their son, upon his becoming of age, for a like consideration, but with the purpose to carry out and execute the intent and plan of her husband that the stock should be given to the son. The case was heard by a judge of the Superior Court and all the evidence appears in a commissioner's report. The question for decision is, whether the finding of

the judge " that said transfer was presumptively in fraud of creditors; and also that the said transfer made by the said Neil J. Tracy was made with the actual intention to defraud his creditors," is so plainly wrong that it should be reversed by this court. *Lindsey* v. *Bird,* 193 Mass. 200. *Glazier* v. *Everett,* 224 Mass. 184, 186.

Tracy, in 1918, with others organized the corporation known as the Harney, Tracy, Crehan Company, putting in $25,000, for which he received one third of the capital stock, represented by two hundred and fifty shares, later, by a stock dividend, increased to three hundred and thirty-four shares. The business of this corporation was successful, as appears from the fact that shortly before this suit was brought the defendant Edward W. Tracy sold the three hundred and twenty-five shares of it which he had received from his father through his mother for $25,000; the proceeds invested by Tracy (the son) in bonds are the property sought to be reached and applied by the creditors of Neil J. Tracy to the payment of his debts.

When these shares of stock were transferred to Tracy's wife for the benefit of his son, Edward, on September 15, 1920, Neil Tracy's liabilities amounted to $187,606.54, of which $163,509.38 was due the Merchants National Bank, where Tracy had obtained the cash to buy the large amount of leather that formed his principal assets and which to Tracy's knowledge looked to his assets (including the stock in question and also a house owned by Tracy's wife) for its security. His assets exclusive of leather were worth about $17,000, perhaps no more than $7,500.

The leather was bought in the fall of 1919 and spring of 1920, at a time when there was a great inflation of prices, at a cost of $336,021, and consisted of about four hundred and seventy-eight thousand feet of glazed kid, known as " table run." This is a stock which contains various grades, not sorted and separated. When shipped to foreign ports it passes through the hands of a merchant who resells it after sorting it out near the customers to suit their different needs; and it requires regrading to make advantageous sales. The leather market had been fairly active up to June, 1920,

but prices had dropped in June. In June and July there was a distinct break and up to September there was a decline so unusual as to cause great anxiety among leather dealers. A majority of dealers believed in September that the decline had spent its force and that later in October and November there would be a reaction, as was the usual course of the leather market in former years; but there was a substantial minority who did not so believe. There was no change from the first until the last of September, " the market was dead." In October and November the market collapsed, culminating in what was described by a witness for the defendant as an " avalanche." As a result Tracy then became hopelessly insolvent.

The judge finds upon undisputed evidence that the value of the leather had fallen on September 15, 1920, by at least thirty-three and a third per cent of the cost; that the uncertainty of the market made the demand for leather slight, except at sacrifice prices; and that it was a great question whether Tracy was solvent on September 15, 1920. The evidence shows and the judge finds that Tracy had tried to sell leather from time to time and had succeeded in selling only a relatively small amount of his best grade at a serious loss. Supported by the evidence the judge further finds that if the bank had insisted upon payment in full of his indebtedness Tracy would have been obliged to sell his entire stock; that to obtain the best prices Tracy would have had to regrade the leather at considerable expense and time; that had he regraded it himself the time taken would have brought him into October, when the market had collapsed; that if he had sold it as a whole, without regrading, the fact that the purchaser would have to take the risk of the market would have affected the price obtainable; that the sale as a whole of such a large amount of leather on an unstable declining market must be taken into consideration; that the probable result of the sale under such conditions is that the loss would have been much larger than thirty-three and a third per cent of the cost, and in all probability would not have enabled him to pay his indebtedness without the three hundred and twenty-five shares of stock; and that the trans-

fer left too small a margin of safety to have warranted the present to his son.

The further finding by the judge that the gift was presumptively in fraud of creditors rests upon the rule that, unless property is retained sufficient and readily available to pay all creditors, a voluntary conveyance is voidable by creditors when the donor at the time of the conveyance is insolvent, is in embarrassed circumstances, and is involved to an extent to endanger the rights of creditors. *Parkman* v. *Welch*, 19 Pick. 231. *Briggs* v. *Sandford*, 219 Mass. 572, 574. *Smith* v. *Clark*, 242 Mass. 1, 7. *Peter Bent Brigham Hospital* v. *McClure*, 245 Mass. 370. In the present case the evidence warranted a finding that Tracy was embarrassed and was involved to an extent to endanger the rights of his creditors when the transfer of the stock was made on September 15, 1920. Beyond the question of the insolvency of Tracy and of his inability to pay his debts as they became due, the judge finds that Tracy had the actual intention to defraud his creditors when the transfer was made. This finding cannot be said to be clearly wrong. It rests not upon the existence or nonexistence of moral turpitude, but upon an unjustifiable purpose to deprive creditors of their legal rights. *Matthews* v. *Thompson*, 186 Mass. 14, 23.

It results that the decree should be affirmed.

*Decree affirmed.*