FRANCIS D. MULLINS, trustee in bankruptcy, *vs.*
ALBERT D. RIOPEL & another.

Worcester. September 22, 1947. — January 8, 1948.

Present, QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Fraudulent Conveyance. Gift. Husband and Wife.*

A husband, who by way of gift, at a time when he was insolvent, trans-
ferred to his wife a bank account which comprised practically all his
property, must be found to have intended the natural consequence of
such a transfer, which was to hinder, delay and defraud his creditors,
even if he had no such actual intent and even if the wife was ignorant
of his insolvency or of any such presumed or actual intent on his part.
Sums, saved by a wife by thrift and economy from weekly allowances
made to her by her husband for household expenses under an agree-
ment between them that such savings should be hers, constituted gifts
to her from him; and, it appearing that at the times of such gifts the
husband was insolvent, such gifts must be found to have been made
with intent to hinder, delay and defraud his creditors.
A decree for the plaintiff was required in a suit in equity by the trustee
in bankruptcy of a husband to compel conveyance to the plaintiff of
real estate standing in the name of the bankrupt's wife and purchased
by her with funds in a savings bank account in her name where it
appeared that such funds were wholly gifts from the bankrupt made
to her when the bankrupt was insolvent and constituting fraudulent
transfers as to his creditors under G. L. (Ter. Ed.) c. 109A, § 4.

BILL IN EQUITY, filed in the Superior Court on May 15,
1946.

The suit was heard by *O'Brien*, J.

*P. V. Rutledge*, for the plaintiff.

*W. J. Griffin*, (*D. P. Callahan, Jr.*, with him,) for the
defendants.

RONAN, J. This is a bill in equity brought by the trus-
tee in bankruptcy of Albert D. Riopel against Riopel and
his wife, seeking to establish the bankrupt's interest in a
certain parcel of real estate which, it is alleged, was pur-
chased in her name with his funds and with intent to hin-
der, delay or defraud his creditors, and praying for a decree
ordering the conveyance of this realty to the plaintiff. After

making findings of fact, the judge entered a decree dismissing the bill, from which the plaintiff appealed.

The evidence has been reported and examined, and it is our duty to determine the facts for ourselves, but the findings of fact made by the judge are not to be reversed unless they are shown to be plainly wrong. We can make other and additional findings of fact and we can make a finding different from that made by the judge, if satisfied that his finding is plainly wrong. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. *Gordon* v. *O'Brien*, 320 Mass. 739, 740.

An examination of all the evidence shows little dispute concerning the material facts. Many of them are settled by documentary evidence, the authenticity of which is unquestioned, and nearly all the rest are established by admissions of the defendants which were not controlled or modified by any other evidence. Indeed, the credibility of the defendants is not attacked relative to any material aspect of the suit. We narrate the material facts found from a report of the evidence. Riopel, while a college student in 1925, took title with his sister, Mrs. Dupre, to an apartment property in Worcester which was owned by one Fortier. Mrs. Dupre paid $2,500 in cash, and together with her husband and Riopel gave a first mortgage to an insurance company for $9,000 and a second mortgage to Fortier for $11,500. She continued to make the payments in accordance with the mortgage notes until May, 1932, when the income from the property had diminished to such an extent that she was unable to make further payments. The insurance company entered and took possession under its mortgage in January, 1933, and at a foreclosure sale in April, 1934, sold the property to Fortier for the amount due on the first mortgage. Fortier in 1943 brought an action against Riopel on the second mortgage note. Riopel filed a petition in bankruptcy in 1945, in which Fortier appears as his only creditor, and was later adjudged a bankrupt.

Riopel opened a savings account in his own name in 1926. It became a joint account in 1930 with his sister,

Mrs. Dupre. This account was transferred on May 16, 1932, to the defendant Ellen R. Riopel, who had married Riopel in June, 1931. This account when transferred to her amounted to $1,775. This account on July 1, 1940, amounted to $5,484.96 due to interest and deposits made by Mrs. Riopel from amounts saved by her from the weekly allowances given to her by her husband for household expenses. Any savings she might be able to make were to belong to her in accordance with an agreement between them. On July 17, 1940, she purchased a house on Shattuck Street in Worcester for $6,000, taking title in her own name and paying $2,000 in cash, which was withdrawn from the savings account, and $4,000 by a mortgage, which she secured from a bank. The remainder of the account, with the exception of $484.96 which was paid to Riopel, was expended in repairs upon the property. The principal of the mortgage has been reduced by payments made by Mrs. Riopel out of the weekly allowances paid to her by her husband.

We first consider whether Mrs. Riopel's rights in this sum of $1,775 are superior to those of her husband's creditor Fortier, in whose shoes in that respect the plaintiff as trustee in bankruptcy now stands. *Thomas E. Hogan, Inc.* v. *Berman,* 310 Mass. 259. Although at the time of the transfer the bank account was in the name of Riopel and his sister, Mrs. Dupre, there is not the slightest suggestion that the latter ever contributed anything to the account, or that she claimed any interest in it, or that she received any consideration for the transfer to Mrs. Riopel. On the other hand, Riopel opened the account, always dealt with it as his own, at least up to the time of the transfer, and admitted that it was his account. Both defendants testified that the transfer of the account was a wedding present from Riopel to his wife. There was no evidence that the transfer was made in consideration of any mutual promises of marriage. We do not, therefor, reach the question whether an oral prenuptial agreement providing for the transfer of property from one party to another and its transfer subsequent to the marriage, or marriage itself,

would be fair consideration for a conveyance of property under G. L. (Ter. Ed.) c. 109A, § 3. *Smith* v. *Allen,* 5 Allen, 454. *Deshon* v. *Wood,* 148 Mass. 132. *Clark* v. *McMahon,* 170 Mass. 91. *Huntress* v. *Hanley,* 195 Mass. 236.

At the time of her marriage, Mrs. Riopel had $800 which she expended on household furnishings apparently with the knowledge and consent of her husband, but the finding of the judge that Riopel agreed to reimburse her lacks any support in the evidence and cannot stand. The only rational conclusion relative to the matter of consideration for this transfer of the bank account is that it was nothing more than a gift from Riopel to his wife. The account comprised practically all the property he had. And a gift of all his property is prima facie evidence of a fraudulent conveyance as to creditors of the donor, if at the time he was insolvent. *Gunn* v. *Butler,* 18 Pick. 248, 252. *Rolfe* v. *Clarke,* 224 Mass. 407, 410, 411, 412. *Dorr* v. *Tracy,* 248 Mass. 201, 205.

At the time of the transfer, and for some time previously and since, Riopel was earning a salary of $2,800. He testified that when he conveyed the account to his wife he had no assets to pay his creditors. Payments on both mortgage notes ceased about the time of this transfer. The principal on both notes at that time amounted to nearly $18,000. Mrs. Dupre and her husband, the other comakers on these notes, were apparently of no great financial means. Both notes were secured by mortgages on the real estate, but it is plain, as it then appeared and as confirmed by subsequent events, that the amount of the notes could not be realized from the property. It is plain that at the time of this voluntary transfer to his wife Riopel was insolvent as defined in G. L. (Ter. Ed.) c. 109A, § 2.

A voluntary conveyance from a husband to his wife is not per se fraudulent for he may still possess property ample to satisfy the claims of his creditors, and, if he does, the latter cannot complain for none of their rights has been impaired. Fraud is never presumed, and creditors attacking a conveyance as fraudulent as to them have the burden of establishing fraud. *Jaquith* v. *Massachusetts Baptist Convention,* 172 Mass. 439, 446. *MacNeil* v. *MacNeil,* 312 Mass.

183, 186. But one deeply in debt, who by a voluntary conveyance puts all his property out of the reach of his creditors, is presumed to intend the natural consequence of such a transfer which is to hinder, delay or defraud his creditors, even if he had no such actual intent and even if the voluntary grantee was ignorant of the insolvency of the grantor or of any presumed or actual intent of his to prevent his creditors from applying the property to the payment of their claims. It follows that this transfer of the $1,775 was fraudulent as to Riopel's creditors. G. L. (Ter. Ed.) c. 109A, § 4. *Gray* v. *Chase*, 184 Mass. 444. *Smith* v. *Clark*, 242 Mass. 1. *Dorr* v. *Tracy*, 248 Mass. 201, 205. *Toy* v. *Green*, 319 Mass. 354, 361.

We next consider whether the plaintiff has established that Riopel has any interest in the Shattuck Street property which can be reached and applied to Riopel's indebtedness. Other than $50 earned shortly after her marriage, Mrs. Riopel had no source of income other than her husband. The performance of household duties or at least supervision over the performance of such duties is the common contribution by a wife toward the maintenance of the home where she lives with her husband and children. A wife is not required to spend all her time in household duties and she may engage in work outside the home and her earnings belong to her. *Rodgers* v. *Boynton*, 315 Mass. 279. Any contract with her husband by which she was to be paid compensation for the performance of household duties and a conveyance of property to her, especially when he was insolvent, as the agreed compensation for the rendition of such services, would not be valid against his creditors. *Lee* v. *Savannah Guano Co.* 99 Ga. 572. *Switzer* v. *Kee*, 146 Ill. 577. *Dempster Mill Manuf. Co.* v. *Bundy*, 64 Kans. 444. *Lewis* v. *Lewis*, 196 Ky. 701. *Bohanan* v. *Maxwell*, 190 Iowa, 1308. *Michigan Trust Co.* v. *Chapin*, 106 Mich. 384. *Matter of Callister*, 153 N. Y. 294. We think a similar conclusion should be reached with respect to that part of the weekly allowances not actually required in the management of her husband's household, even though as against her husband she might retain the excess as her own in accordance with

her arrangement with him. Such savings, we think, are to be regarded as gifts from the husband which she cannot retain as against his creditors if the latter insist on having these savings applied to his indebtedness, although the existence of such an asset may be due almost entirely to the thrift and economy of the wife. *Milkman* v. *Arthe,* 221 Fed. 134.[1] *Petingale* v. *Barker,* 21 D. C. 156. *Wisconsin Granite Co.* v. *Gerrity,* 144 Ill. 77. *Gable* v. *Columbus Cigar Co.* 140 Ind. 563. *Trefethen* v. *Lyman,* 90 Maine, 376, 381. *Conger* v. *Corey,* 39 App. Div. (N. Y.) 241. *Zuckerman* v. *Munz,* 48 Tex. Civ. App. 337. Compare *Ford Lumber & Manuf. Co.* v. *Curd,* 150 Ky. 738; *Carpenter* v. *Franklin,* 89 Tenn. 142.

All of the money deposited in the bank account after its transfer to the wife came as a gift from her husband. The entire account, with the exception of $484.96 which the husband withdrew, went into the purchase and repair of the Shattuck Street property and the subsequent payments upon the mortgage came from weekly allowances from the husband. The entire account and payments on the mortgage were gifts from her husband while he was insolvent.

There is nothing to control evidence that after the transfer of his bank account to his wife in 1932 Riopel never had any assets to pay his creditors. The defendants admit that this transfer was a gift. The excess weekly allowances retained by the wife were likewise gifts. We cannot accept the finding of the judge that Riopel in making this transfer and the excess allowances to his wife had no intent to hinder, delay or defraud his creditors. That he had such an intent follows from those undisputed and indisputable facts which were prima facie evidence of such an intent and, in the absence of any evidence to control them, precluded any inference to the contrary. *Cook* v. *Holbrook,* 146 Mass. 66, 67. *Matthews* v. *Thompson,* 186 Mass. 14, 23. *Rolfe* v. *Clarke,* 224 Mass. 407, 410–411. *Newton Mortgage Corp.* v. *Nissen,* 280 Mass. 267. *McCarthy* v. *Griffin,* 299 Mass. 309.

The final decree is reversed. A new decree is to be entered

---

[1] See also *Milkman* v. *Arthe,* 223 Fed. 507.

establishing the indebtedness of Riopel and ordering the defendants to convey the property subject to any existing encumbrances.

*So ordered.*