PATRICK J. WARD, JR. vs. ROBERT W. GRANT & another
(and a companion case[1]).

Hampden.    November 19, 1979. — March 11, 1980.

Present: ARMSTRONG, ROSE, & PERRETTA, JJ.

*Fraudulent Conveyance.   Trust, Parol trust.*

In an action by a creditor alleging that his debtor had conveyed his inter-
est in realty to his wife to defraud the creditor, evidence that the wife
had purchased the property with her own funds and conveyed an in-
terest to her husband for the limited purpose of obtaining a loan to
make improvements to the property and that a reconveyance to the
wife was made after the loan application was denied warranted a con-
clusion that the reconveyance was not fraudulent as to the creditor.
[365-369]

CIVIL ACTIONS commenced in the Superior Court on Sep-
tember 13, 1977, and June 20, 1978.

The cases were heard by *Simons, J.,* on motions to dis-
miss.

*Patrick J. Melnik* for the plaintiff.

*Robert E. George* for the defendants.

PERRETTA, J.   In the principal case,[1] the plaintiff, Ward,
appeals from a judgment entered in the Superior Court dis-
missing his complaint brought pursuant to G. L. c. 109A,
§ 9.   In that action Ward alleged that his debtor, the de-

---

[1] Ward brought two complaints, both of which were dismissed, and
they have been consolidated on his appeals from the judgments.   The
principal appeal is from the judgment entered in his action against Robert
W. Grant and Sharon A. Keevers Grant.   He also commenced an action
against Marion T. Rollins and Elizabeth H. Worth.   Because the propriety
and relevancy of this second action is totally dependent upon a successful
outcome for him in his first action, and, because we affirm the judgment
dismissing that complaint, it is unnecessary to consider his claims against
Rollins and Worth.

fendant Robert W. Grant, had conveyed his interest in realty in order to remove his assets from Ward's reach. The realty had been held by Robert and his wife, the defendant Sharon A. Grant, as tenants by the entirety. The judge found that Robert did not convey this asset for the purpose of defrauding his creditor and that the conveyance was not fraudulent as against Ward. These findings are neither clearly erroneous nor vitiated by an error of law, and we affirm the judgment.

This is a case "where the accuracy of the findings depends upon the credibility of the oral testimony and where the conclusions of the judge who saw and heard the witnesses must be given due weight." *Metropolitan Life Ins. Co.* v. *Pollack,* 332 Mass. 582, 584 (1955). *New England Canteen Serv. Co.* v. *Ashley,* 372 Mass. 671, 675 (1977). Thus, while we are free to make additional findings because we have the transcript of the evidence, certain exhibits, and the findings and rulings of the judge, *Mullins* v. *Riopel,* 322 Mass. 256, 257 (1948); *Western Massachusetts Elec. Co.* v. *Sambo's of Massachusetts, Inc.,* 8 Mass. App. Ct. 815, 817 (1979), we will not disturb any facts resolved on the basis of credibility. We relate the facts as contained in the judge's findings, which are not clearly erroneous, Mass.R.Civ.P. 52(a), 365 Mass. 816-817 (1974), augmenting them with the undisputed portions of testimony set out in the transcript in order to provide a full narrative of the controversy. *Hastoupis* v. *Gargas, ante* 27, 28-29 (1980).

In 1968 Robert executed six promissory notes payable to Ward in the total principal amount of $18,000. These notes were due on January 16, 1973. In 1974 Robert married Sharon, who in 1976 purchased a motel-restaurant complex on Route 20 in Brimfield. She purchased this property with her own money and with her own credit, granting a mortgage to her seller. Robert took no part in this transaction, although he and Sharon operated the business together. Thereafter, Sharon desired to make improvements to her property, and she sought a loan from the Small Business Ad-

ministration (SBA). When Sharon made her loan application, an SBA agent advised her that her application would be more favorably received if she and Robert held the property jointly. While such a statement by the SBA agent was improper,[2] Sharon wished to enhance her application, and on September 28, 1976, she conveyed her property to Robert and herself as tenants by the entirety. By approximately January of 1977, Sharon was notified that the SBA had refused her request for a loan.

Sharon and Robert then took affirmative steps to convey the realty back to her. They contacted their attorney and informed him of their desire to retransfer the land. The deed, however, was in a safety deposit box in a bank in Palmer, and it was not retrieved until March. On March 15, 1977, Sharon and Robert executed a new deed conveying the property to Sharon, and the deed was recorded on March 24, 1977. On March 5, 1977, while Sharon and Robert were engaged in this process, Ward commenced suit against Robert on the notes he had executed in 1968 and had failed, as alleged by Ward, to pay when they became due in 1973. Ward gave notice of this suit to Robert at his usual address, but Robert was away with Sharon at the time, and Robert did not have actual notice of the suit until he returned home on March 10, 1977, five days after the commencement of the suit and five days prior to the transfer to Sharon. Ward contends the transfer is of no consequence to him because it was fraudulent and that as a result of a sheriff's sale he is the true owner of Robert's interest in the property.[3]

---

[2] The Equal Credit Opportunity Act, P.L. 93-495, § 701(a), 15 U.S.C. § 1691(a) (1976), was in effect at that time, and it provided that marital status had no bearing on credit applications. Additionally, the SBA had a direct Congressional mandate to enforce this Act. P.L. 93-495, § 704(a)(9), 15 U.S.C. § 1691c(a). Because Sharon held sole title at the time of her request, the SBA's security interest in her property would not have been affected by her marital status. P.L. 93-495, § 705(a), 15 U.S.C. § 1691d(a).

[3] After Ward obtained a judgment on the notes, he recorded his execution, seizing all of Robert's interest in the realty. He purchased that interest for $1,000 at a sheriff's sale, and he received a deed from the sheriff

There is no dispute that Ward is a "creditor," that the notes executed by Robert and the judgment obtained on them are encompassed within the term "debt," and that the transfer of the property by Sharon and Robert to Sharon is a "conveyance," all within the scope of the definitions contained in c. 109A, § 1. The only question is whether the conveyance was made with the intention to hinder, delay, or defraud Ward in his collection of Robert's debt. Ward had the burden of proving the conveyance fraudulent and he claims he did so under c. 109A, § 4,[4] by showing that after the conveyance Robert owned no assets other than an automobile, that he received no money for the interest he conveyed, and that he was insolvent. "[O]ne deeply in debt, who by a voluntary conveyance puts all his property out of the reach of his creditors, is presumed to intend the natural consequence of such a transfer which is to hinder, delay or defraud his creditors, even if he had no such actual intent and even if the voluntary grantee was ignorant of the insolvency of the grantor or of any presumed or actual intent of his to prevent his creditors from applying the property to the payment of their claims." *Mullins* v. *Riopel*, 322 Mass. 256, 260 (1948). The judge found, however, that Robert's financial condition was the same at the time he conveyed his interest as it was when he received the interest. He further found that the property had been conveyed to him for the purpose of facilitating Sharon's loan and that the conveyance was not intended to vest ownership of the property in him.

---

dated January 28, 1978. Thereafter, the defendant Rollins, holder of a mortgage on the realty from Sharon, foreclosed on the property. On June 13, 1978, the defendant Worth purchased the property at the foreclosure sale. Ward alleges he was never given notice of the foreclosure or foreclosure sale, and it does not, therefore, cut off his rights to the land. See note 1, *supra*).

[4] "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Ward claims these findings are based upon testimony received by the judge in violation of the parol evidence rule and, therefore, that they are unsupported by admissible evidence. This argument misses the mark. The parol evidence rule precludes the introduction of evidence which alters or contradicts an unambiguous writing. See *Kerwin* v. *Donaghy,* 317 Mass. 559, 567-568 and nn. 1, 2 (1945). Robert did not attempt to alter the terms of his deed; to the contrary, he sought to establish that the writing did what it purported to do on its face, that is, convey his interest in the premises to Sharon. Compare *Graham* v. *Oman,* 358 Mass. 369, 373 (1970). The evidence that Ward complains of went to the issue of Robert's motive in, and the circumstances of, his divesting himself of his interest, and it was properly accepted by the judge. *Beaman-Marvell Co.* v. *Gunn,* 306 Mass. 419, 422-423 (1940). *Bettencourt* v. *Bettencourt,* 362 Mass. 1, 9 (1972).

The judge's conclusion that Robert's conveyance was not fraudulent is supported by, and is consistent with, his subsidiary findings. Sharon purchased the property with her own funds and credit, and she conveyed an interest to Robert for a limited purpose. When that purpose did not materialize, they sought a reconveyance to establish the status quo ante. Sharon manifested and expressed a clear intention that Robert receive and deal with her property for her benefit, and she created an express oral trust. See *Bancroft* v. *Curtis,* 108 Mass. 47, 48-49 (1871); *Briggs* v. *Sanford,* 219 Mass. 572, 573-575 (1914); *Hutchins* v. *Mead,* 220 Mass. 348, 349-350 (1915); *Perkins* v. *Hilton,* 329 Mass. 291, 293-296 (1952); *Metropolitan Life Ins. Co.* v. *Pollack,* 332 Mass. at 584-585; *Young* v. *Paquette,* 341 Mass. 67, 76 (1960); *Trovato* v. *Walsh,* 363 Mass. 533, 535 (1973); *Barter* v. *Stewart,* 117 N.H. 776, 779 (1977); 1 Scott, Trusts, §§ 23, 24, at 190-194 (3d ed. 1967). Ward cannot defeat the existence of the trust on the basis of the Statute of Frauds, G. L. c. 259, § 1, Fourth, because that statute only precludes judicial enforcement of the oral trust; it does not render it void as between the parties to the trust who desire to abide by the

terms of their oral agreement. *Twomey* v. *Crowley*, 137 Mass. 184, 185 (1884). *Hoffman* v. *Charlestown Five Cents Sav. Bank*, 231 Mass. 324, 329 (1918). *Trovato*, 363 Mass. at 535. 1 Scott, Trusts § 51, at 374-375 (1967). Because Robert held only legal title to the property, his financial condition was unaffected by either his receipt of an interest in the realty or his retransfer of that interest. In conveying his interest he was fulfilling his oral agreement with Sharon, and he was not acting in violation of G. L. c. 109A, § 4 or § 7. Thus, at the time of the execution and the sheriff's levy and sale during October and November, 1977, and January, 1978, Robert had no interest in the premises, and the sheriff's sale was ineffective. Ward, therefore, acquired no interest in the property, and he has no claim against the defendants (in the companion case) Rollins and Worth. (See note 3, *supra*).

*Judgments affirmed.*