**In re Juraj J. BAJGAR, Debtor.**

**Carol B. MARTIN, Administrator, Plaintiff,**

v.

**Juraj J. BAJGAR, Defendant.**

**Bankruptcy No. 94–13265–JNF. Adv. No. 94–1526.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 28, 1995.

Arthur J. Carakatsane, Middleton, MA, for Carol B. Martin.

Richard S. Hackel, Boston, MA, for Juraj J. Bajgar.

## OPINION

WILLIAM C. HILLMAN, Bankruptcy Judge.

Carol B. Martin, administrator of the estate of Francis Martin ("Martin") filed this adversary proceeding objecting to the granting of a discharge to Juraj J. Bajgar ("Debtor") on the basis of his transfer of certain properties.

On July 10, 1995, I bifurcated the matter into (1) issues involving the real estate in Arlington, Massachusetts and (2) issues involving the real estate in Port St. Lucie, Florida (the "Florida property"). As the former is the subject of ongoing state court litigation (relief from stay having been granted) I deal here only with the latter.

### Findings of Fact

Debtor purchased the Florida property under a land sales contract. When payments were completed, at a cost of $6,000–$8,000, title was conveyed to Debtor and his wife, Clara Bajgar ("Clara"), on August 19, 1991. The deed was recorded on November 4, 1991.

On November 10, 1993, Debtor conveyed his interest in the Florida property to Clara in consideration of "love and affection". It has been stipulated that this was "less than adequate consideration for the transfer." The "estimated present value" of the land is $13,000.00.

At the time of the conveyance, Martin had brought suit against Debtor and he was involved in several foreclosure actions.

Debtor filed his original petition under Chapter 7 on May 16, 1994, less than a year after the conveyance of the Florida property.

In his statement of affairs he disclosed the transfer to Clara, and attached a copy of the deed to her.

At the § 341 meeting, Debtor expressed his willingness to reconvey the Florida property. Clara concurred. Over a month after the meeting, the Florida property was reconveyed to Debtor and Clara, husband and wife, the status of title prior to the deed to Clara. The reconveyance deed and other documents necessary to effect the transfer under Florida law was executed on September 30, 1994, and it was immediately delivered to the trustee in bankruptcy.

### Discussion and Conclusions of Law

Debtor conceded during the trial that "there is no dispute that [the conveyance of the Florida property] is a fraudulent transfer on its face ... in violation of § 548." [1]

It is not clear whether he was admitting to a fraudulent transfer under § 548(a)(1) or § 548(a)(2). [2] The distinction is critical in many cases because the former provision involves *actual intent* to hinder, delay or defraud and the latter does not require proof of intent. The language of § 727(a)(2)(A) [3] does require *intent*, but not *actual* intent as is demonstrated by the cases next cited.

The Debtor specifically admitted that the elements of § 548(a)(2) are present in this case. And when they are, as Judge Glennon has held,

"the intent of the debtor is immaterial; this section imposes a constructive fraud standard. Where the above criteria are satisfied, a conclusive presumption of fraud arises."

"(B)(I) was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer...."

---

1. Quote from argument of Debtor's counsel, *Oral Transcript* Tape 1, Side A.

2. "(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
 "(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ..., indebted; or
 "(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

3. "(a) The court shall grant the debtor a discharge, unless—

 • • • • •

 (2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... —
 (A) property of the debtor, within one year before the date of the filing of the petition...."

*Egan v. Oliver (In re Oliver)*, 38 B.R. 407, 410 (Bankr.D.Mass.1984) (citations omitted).

While not agreeing that the presumption is conclusive, Judge Yacos has held that a presumption of fraudulent intent arises once there has been a "showing of gratuitous transfers of assets in the shadow of a bankruptcy filing." *Francis v. Riso (In re Riso)*, 74 B.R. 750, 757 (Bankr.D.N.H.1987).

I find no evidence that Debtor has overcome the presumption.

Further, I find adequate circumstantial evidence to demonstrate that Debtor had an *actual* intent to hinder, delay or defraud his creditors. A finding of actual intent may be based upon such evidence. *Funeraria Porta Coeli, Inc. v. Rivera de Montes (In re Rivera de Montes)*, 103 B.R. 362, 365 (D.P.R.1989).

At a time when he was facing foreclosure on various properties and at least one civil suit for monies owed, Debtor delivered title to his only unencumbered asset to his wife, testifying that it was an engagement gift delayed by almost a quarter century.[4]

 Debtor argues, however, that I must find a further fact. He contends that proof of concealment is a necessary element of proof of fraudulent intent under § 727(a)(2)(A), and argues correctly that there was no concealment in this instance.

Debtor's argument is without merit. Concealment is just one manner of creating a fraudulent transfer; it is not a condition precedent to a finding of a fraudulent transfer nor is lack of concealment specified in the statute as a defense to an action involving a fraudulent transfer. As the Ninth Circuit Court of Appeals has stated, "disclosure does not undo a transfer." *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1345 (9th Cir.1986).

The *Adeeb* case does, however, provide an argument that supports Debtor's ultimate conclusion that his discharge should not be denied.

Adeeb, on the advise of incompetent counsel, had made fraudulent transfers of several parcels of real estate. When he later obtained counsel who knew whereof he spoke, he began to undo the transfers. It is not clear that all of the reconveyances were complete at the time the petition was filed. It is unquestioned, however, that Adeeb told his creditors about the transfers and that he was reversing them.

A § 727(a)(2)(A) adversary proceeding was commenced seeking an order denying Adeeb's discharge. He argued that there had not been a transfer within the meaning of that section because "transferred" in that context means "transferred and remained transferred." This reading goes beyond the statutory definition of the term.[5] Nevertheless, he found a receptive audience in the circuit judges.

Determining what they considered to be the purpose of the statutory language, the judges agreed that "transferred" in § 727(a)(2)(A) means "transferred and remained transferred." *Id.* at 1344. The court explained:

"First this reading encourages honest debtors to recover property they have transferred during the year preceding bankruptcy. Encouraging debtors to recover improperly transferred property facilitates the equitable distribution of assets among creditors by ensuring that the trustee has possession of all of the debtor's assets. Second, this reading permits the honest debtor to undo his mistakes and receive his discharge.

"We are also persuaded by practical considerations that a discharge should not be

---

4. The facts here are close to those before the Supreme Judicial Court in *Mullins v. Riopel*, 322 Mass. 256, 76 N.E.2d 633 (1948), a suit by a bankruptcy trustee to establish a common law fraudulent conveyance, which has the same elements as § 548(a)(1). The court held that "a gift of all [debtor's] property is prima facie evidence of a fraudulent conveyance as to creditors of the donor, if at the time he was insolvent." 322 Mass. at 259, 76 N.E.2d 633.

5. " '[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, included retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54).

denied in the present situation. It is not uncommon for an uncounseled or poorly counseled debtor faced with mounting debts and pressure from his creditors to attempt to protect his property by transferring it to others. Upon later reflection or upon obtaining advice from experienced bankruptcy counsel, the debtor may realize that his original transfer of the property was a mistake. If the debtor is informed that his mistake bars him from a discharge in bankruptcy, he will have no incentive to attempt to recover the property or to reveal its existence to his creditors. Rather, he will have a strong incentive to continue to hide his assets."

*Id.* at 1345.

*See also Jones v. Jones (In re Jones),* 97 B.R. 36, 38 (Bankr.D.Mont.1989); *Cogan v. Barney (In re Barney),* 86 B.R. 105, 110 (Bankr.N.D.Ohio 1987) (both following *Adeeb* ).

The Eleventh Circuit Court of Appeals is diametrically opposed:

"The statutory language of section 727(a)(2)(A) is plain and unambiguous. Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not. We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face. We therefore reject the approach initiated by the Ninth Circuit in Adeeb. We recognize that our holding may work hardship is some cases, perhaps this one, but we are compelled to apply statutory law as enacted by Congress."

*Davis v. Davis (In re Davis),* 911 F.2d 560, 562 (11th Cir.1990).

The issue for me to determine is whether "transferred" is limited in scope to the statutory definition in § 101(54), per *Davis,* or can be explicated as in *Adeeb.* I believe that the latter approach is both authorized and preferable.

■ *Davis* adopts what is often cited as the *Ron–Pair* rule—that when statutory language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron–Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). But *Ron–Pair* also contains an exception to its absolute rule for "rare cases in which the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242, 109 S.Ct. at 1030. I believe that I am faced with such a rare case.

Justice Douglas reminded us that we do not read statutory words "with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

Under the strict approach of *Davis,* a debtor would have no incentive to reverse fraudulent transfers. If such transfers create an indelible badge of fraud, the debtor's impetus would be to conceal them in the hope that they would not be discovered. Honesty, or reversing dishonesty, would be the worst policy. The 1970 Bankruptcy Commission recognized that "It is important that the bankruptcy law should not itself stimulate dishonesty...." *Report of the Commission on the Bankruptcy Laws of the United States,* H.R. 93–137 (93d Cong. 1st Sess.) 82 (1973). A debtor who reveals and cures misdeeds falls within the description of "the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). He or she is entitled to "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Id.; Grogan v. Garner,* 498 U.S. 279, 286–287, 111 S.Ct. 654, 658–659, 112 L.Ed.2d 755 (1991).

■ The heart of the fresh start philosophy is said to be found in § 727, *In re Soto,* 667 F.2d 235 (1st Cir.1981), and it is well settled that exceptions to discharge are to be narrowly construed. *Century 21 Balfour Real Estate v. Menna (In re Menna),* 16 F.3d 7, 9 (1st Cir.1994). All of these factors

lead to my conclusion that *Adeeb* states the preferable interpretation of the statute.

Martin urges that, even if I adopt the *Adeeb* standard, Debtor should not benefit since the reconveyance was not completed (by delivery of a deed to the trustee) until several months after the filing of the petition, citing *Smiley v. First National Bank (In re Smiley)*, 864 F.2d 562 (7th Cir.1989). I find that case inapposite.

The *Smiley* court refused to apply *Adeeb* to the facts before it since the "property was recovered only as a result of the action of the bankruptcy trustee and the court." *Id.* at 566. That is not the situation here. While it is true that the reconveyance was not complete either at the time of the filing of the petition or at the time of the § 341 meeting, full disclosure was made in the schedules attached to the original petition, including a copy of the conveyance to Clara, and the intention to reconvey was expressed at the § 341 meeting. I believe those facts satisfy the *Adeeb* test that the recovery be "prior to the time the bankruptcy petition was filed or within a reasonable time after it was filed." 787 F.2d at 1346. Debtor's actions go beyond the "mere discussion" of reconveyance held inadequate in *Cullen Center Bank & Trust v. Lightfoot (In re Lightfoot)*, 152 B.R. 141, 147 (Bankr.S.D.Tex.1993).

### Conclusion

As a result, I find that the conveyance of the Florida property does not serve as grounds to deny the debtor's discharge under § 727(a)(2)(A). Judgment will enter for the defendant as to the Florida property.

The challenge to the transfer of the Arlington property is pending before the state court. As a result, I cannot fully dispose of this matter at the present time.

The adversary proceeding will be reassigned for a status conference when a final judgment is rendered by the state court.