Greco, J.
This is essentially an appeal by only two of the defendants, Bruce Ross (“Ross”) and Paul Murphy (“Murphy”), of the allowance of the motion for summary judgment filed by the plaintiff, Baker Tanks, Inc. (“Baker”). The complaint alleged that in 2002, Baker and defendant C & B Construction Management Trust, Inc. (“C&B”) entered into a written agreement for C&B’s rental of pumping equipment from Baker; that C&B failed to pay the rental fee; that Ross had personally guaranteed C&B’s obligation to pay; and that Ross had conveyed his interest in real estate in Gloucester to a trust of which Murphy was trustee “for the purpose of defrauding [Baker], and hindering and delaying the collection of the indebtedness owed by... Ross to ... [Baker].” Baker sought judgment against Ross for damages in the amount owed under the rental agreement ($17,548.98), and for equitable relief in the form of an order setting aside the conveyance of the real estate from Ross to Murphy. In his answers to both Baker’s original complaint and amended complaint, and in an affidavit filed in opposition to Baker’s motion for an attachment, Ross denied that he signed the personal guaranty. Ross did not respond, however, to Baker’s requests for admissions, one of which was that the signature on the personal guaranty was his.
The materials presented by Baker to support its motion for summary judgment against Ross on his guaranty included the following: an affidavit of its branch manager stating that C&B’s credit application contained a personal guaranty by Ross; answers to interrogatories propounded to C&B’s office manager wherein she stated that she prepared credit applications on behalf of C&B with the knowledge, and at the direction, of Ross, that she was familiar with Ross’s signature, and that the signature on the Baker guaranty was that of Ross[4]; Ross’s answers to interrogato *114 ries that he did not know whether C&B had submitted a credit application to Baker, or whether any payments had been made to Baker[5]; and an affidavit from Baker’s attorney stating that he served the request for admissions, mentioned above, on Ross’s attorney, and that no response was made.
To support its request for summary judgment on the alleged fraudulent conveyance claim, Baker’s attorney presented his own affidavit[6] indicating the results of a title search on the Gloucester property, which revealed that on November 4, 2004, Ross had conveyed the property for consideration of less than $100.00 to Murphy as Trustee of the Shore View Trust; that on February 23,2005, Murphy had reconveyed the property back to Ross; that also on February 23, 2005, Ross had obtained a mortgage on the property in the amount of $625,000.00; that on April 8,2005, Ross had once again conveyed the property for consideration of less than $100.00 to Murphy as Trustee of the Shore View Trust; and that the Shore View Trust “is a nominee, the sole purpose of which is to hold title to this real estate, and to act at the direction of the beneficiary or beneficiaries.” Baker’s attorney further averred that the conveyance to the Trust was “for the sole purpose of placing [the] property beyond the reach of creditors.”
The record in this case indicates that the original complaint was filed on March 15, 2005 and served on Ross on April 13,2005.
1. In seeking summary judgment, Baker assumed the initial burden of showing that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. Aldrich v. ADD Inc., 437 Mass. 213, 218 n.9 (2002). The materials Baker submitted, outlined above, satisfied its initial burden of demonstrating that Ross had agreed to be personally liable. Ross’s failure to respond to Baker’s request for an admission that the signature on the guaranty was his “conclusively established the truth” of that fact. Reynolds Aluminum Bldg. Prods. Co. v. Leonard, 395 Mass. 255, 259 (1985). See Mass. R. Civ. R, Rule 36(a). “This remains true regardless of the importance of the matters thus deemed to be admitted.” Reynolds Aluminum Bldg. Prods. Co., supra. To the extent that the “effect of the rule in a given case may be unduly harsh,” a party may ask the court “to exert an ameliorating influence” in order to “avoid a result in which form triumphs over substance.” Id. at 260. See also Houston v. Houston, 64 Mass. App. Ct. 529, 533 (2005). Ross did not, however, seek such relief from the effect of Rule 36 (a).
Thus, the summary judgment burden then shifted to Ross to show the existence of a factual dispute. To do so, he could not “rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” Mass. R. Civ. R, Rule 56(e). Again, Ross made no response. In his brief on this appeal, Ross argues that the genuineness of the signature on the guaranty was in dispute by virtue of the affidavit he filed in opposition to Baker’s motion for an attachment. But that affidavit was filed eight *115 months before Baker sought summary judgment and, thus, was not submitted in opposition to that motion. Moreover, (lie affidavit was filed seven months before Baker’s request for admissions. Clearly, Baker was relying, at least in part, on Ross's failure to respond to that request. In these circumstances, it was incumbent on Ross to do something to counter the effect of Rule 36(a).[7] When he did nothing, the trial judge was fully warranted in granting summary judgment and in denying Ross’s motion for reconsideration.
2. On the other hand, notwithstanding Ross’s lack of response, summary judgment on Baker’s claim that the transfer of the Gloucester property to the Shore View Trust was fraudulent cannot stand. As noted above, the initial summary judgment burden was on Baker to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. “The inference to be drawn from the burden placed on the moving party is that his failure to establish the absence of a genuine issue of material fact, must, without more from his opponent, defeat his motion” (emphasis supplied). Community Nat'l Bank v. Dawes, 369 Mass. 550, 554 (1976). In other words, until the moving party satisfies its initial burden, “the opposing party is not obliged to present materials in opposition to the motion.” Berrios v. Perchik, 20 Mass. App. Ct. 930 (1985). See Stop & Shop Supermarket Co. v. Loomer, 65 Mass. App. Ct. 169, 171 (2005).
Baker did not satisfy its initial burden and, therefore, no burden shifted to Ross. “Fraud, which is generally a question of fact, is never presumed but must be proved by the party who relies upon it.” Toy v. Green, 319 Mass. 354, 360 (1946). See Mullins v. Riopel, 322 Mass. 256, 259 (1948) (creditor’s attack on conveyance as fraudulent). In an effort to satisfy its burden of establishing that Ross’s conveyance to the Trust was fraudulent as a matter of law, Baker points to G.L.c. 109A, §5(a), which provides that “[a] transfer made... by a debtor is fraudulent as to a creditor ... if the debtor made the transfer... (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.” Subsection (b) of §5 lists eleven factors that may be considered in determining whether there was an “actual intent.” Nothing in §5, however, suggests that the presence of some combination of these factors, or even all of them, compels a finding of fraud; the factors are simply those that may be considered. In this case, some of the factors are present and would certainly support a finding of fraud after trial. But “[a] court should not grant a party’s motion for summary judgment... ‘because it appears that the adversary is unlikely to prevail at trial.’" Attorney Gen. v. Bailey, 386 Mass. 367, 370 (1982), quoting 10 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE §2725, at 514 (1973). Moreover, some of the factors listed in the statute are not present in this case, or would actually support a finding that there was no fraud. For example, the plaintiff’s summary judgment materials could be construed to indicate that the transfer to the Trust was not concealed. See G.L.c. 109A, §5 (b) (3). Nor is there any indication that the Gloucester property represented “substantially all of [Ross’s] assets,” that Ross “absconded,” or that Ross became “insolvent.” See §§5(b) (5)-(6) and 5(b) (9).
*116 Finally, it should also be noted that the transaction between Baker and C&B took place in the spring of 2002, and that the Gloucester property was in Ross’s name after the equipment rental account became delinquent. There was even a period of time leading up to the filing of this action, and for a short period thereafter, i.e., from February 23,2005 to April 8, 2005, that the property was once again in Ross’s name. Thus, while there may be “[i]ndicia or ‘common badges of fraudulent intent,”’ Palmer v. Murphy, 42 Mass. App. Ct. 334, 345 (1997), quoting Federal Deposit Ins. Corp. v. Anchor Props., 13 F.3d 27, 32 (1st Cir. 1994), as Baker argues, and while actual intent may be “proved circumstantially and inferentially,” id., the materials presented by Baker were not sufficient to demonstrate that it was entitled to summary judgment as a matter of law.
Accordingly, the judgment on Count II of the complaint is affirmed, but the judgment on Count III is vacated. The matter is returned to the Salem District Court for trial on Count III.
So ordered.

 Shortly after the transaction between Baker and C&B, Ross and the office manager married. They subsequently divorced.

 When asked “ [i]f you allege that you do not owe Baker Tank for rental of... pumping equipment, please state all the facts upon which you rely in making said allegation,” Ross answered, “The defendant states that he believes that if if was indebted to [Baker] in any amount, those amounts have been paid” (emphasis supplied).

 This was the same affidavit filed by Baker in support of its ex parte motion for a real estate attachment.

 From the record before us, it would appear that Ross first made reference to his earlier affidavit when he sought reconsideration of the allowance of Baker’s motion for summary judgment.